Michael H. KURZMANN, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

No. 381, 2005.

Supreme Court of Delaware.

Submitted: June 14, 2006.
Decided: July 13, 2006.

Michael R. Abram, Law Office of Edward C. Gill, P.A., Georgetown, Delaware for appellant.

Kim Ayvazian, Department of Justice, Georgetown, Delaware for appellee.

Before STEELE, Chief Justice, HOLLAND and BERGER, Justices.

STEELE, Chief Justice.

Several years ago, the defendant appellant, Michael Kurzmann pleaded guilty to assaulting his wife and to several other charges. A Superior Court judge sentenced him to seven years at Level 5, suspended for six months at Level 4, followed by Level 3 probation. On July 4, 2005, while he was still on probation, Kurzmann allegedly assaulted his wife. The State brought a violation of probation proceeding against Kurzmann based on the alleged assault contending, among other things, that Kurzmann violated his probation by committing a new criminal offense. After a contested VOP hearing at which both the State and Kurzmann presented testimony, a Superior Court judge found that Kurzmann violated his probation by assaulting his wife. The Superior Court judge then sentenced Kurzmann to serve seven years at Level 5, the full suspended Level 5 term of the original sentence. Kurzmann now appeals the judgment that he violated his probation claiming that the prosecutor engaged in egregious misconduct at the VOP hearing; that the Superior Court judge sentenced him with a closed mind; that the Superior Court judge should not have found a violation of probation when the State never charged him with a criminal offense arising out of the alleged assault; and that the Superior Court judge impermissibly relied upon "medical testimony" from a non-expert

witness. We have concluded that Kurzmann's arguments are without merit. Accordingly, we affirm the judgments of the Superior Court.

### FACT AND PROCEDURAL HISTORY

On April 21, 2004, Kurzmann pleaded guilty to one Count of Second Degree Assault and three Counts of Endangering the Welfare of a Child for an incident in which he assaulted his wife, Lea Kurzmann. On the Assault charge, Kurzmann received a sentence of four years at Level 5, with credit for time served, suspended for six months at Level 4 home confinement, followed by one year of probation at Level 3. On each of the three Endangering charges to which he pleaded guilty, Kurzmann received a sentence of 1 year at Level 5 suspended for 1 year of probation at Level 3. The probation for the Endangering charges ran concurrently with that for the Assault charge.

On February 25, 2005, while he was still on Level 3 probation, Kurzmann was arrested and charged with one Count of Terroristic Threatening, three Counts of Endangering the Welfare of a Child, and two Counts of Offensive Touching. Kurzmann's probation officer filed a report alleging a violation of probation, in part, based on the new charges. After a trial in Family Court, Kurzmann was found not guilty of the Terroristic Threatening charge and a Family Court Commissioner dismissed the remaining charges. Because of the outcome in Family Court, Kurzmann's probation officer withdrew the violation report on June 22, 2005. Thereafter, Kurzmann continued on Level 3 probation.

Robin Williams and her fiancé, Kevin Walls, a retired Probation and Parole Officer, were at Back Bay Skillets, a restaurant in Long Neck, Delaware on July 4, 2005. Williams was previously employed as a domestic violence advocate case manager at the Division of Family Services. During the course of her employment at DFS, Williams worked with Lea Kurzmann for about nine months while Lea was a DFS client. During the nine months, Williams had "quite a bit of contact with Lea." While Williams was in the restaurant, Lea abruptly rushed inside "clutching" her two-year old child. Lea was crying, her eye was almost swollen shut, her lip was "busted" and there was blood on her and "all over the child." Lea was hysterical, "definitely in fear," and said: "Don't let him come in here. Please don't let him come in here." Lea put down her child, and Williams then picked up the child. Shortly thereafter, Kurzmann walked into the restaurant and demanded to know who Williams was and why she was holding his child. Kurzmann denied that he had hurt Lea, but Lea looked at her child and said "Tell Ms. Robin, Joanna, that daddy—tell Ms. Robin what daddy did. Daddy hit mommy." The child did not respond.

Williams gave the child back to Lea and Walls asked Kurzmann to step outside of the restaurant. After some prodding, Kurzmann left. Williams stayed and talked with Lea for over an hour. Lea told Williams that she and her husband had an argument the previous day, during which Kurzmann poked Lea in the neck. After the argument Lea left her home and spent the evening in her vehicle. When Lea came back home the next day, she refused to get out of the vehicle. Kurzmann came out of the residence screaming at Lea. He then approached the van and hit Lea with his fist on the side of her face. The two-year old child was with Lea in the van during the assault.

During the hour in which Lea talked with Williams, she "remained upset" and "never stopped crying." Williams unsuccessfully tried to convince Lea to go to a battered women's shelter, but Lea did not

want to go because she feared DFS would be involved and she would "end up losing her children." After the conversation with Williams, Lea went back to her home, which was across the street from the restaurant. Kurzmann arrived back at the home a few minutes later. Once Williams saw Kurzmann go back into the home, she called the police to report the incident. Before the police arrived, Lea left in a van and drove to her nearby friend's house. One of the police officers that responded to the scene later told Williams that she had spoken with Lea over the phone and that both Lea and Kurzmann said that Kurzmann had been playing football with their dog and that the football hit Lea when she came outside with the child.

In an attempt to "get some information" about the July 4th incident, two probation officers, Debbie Benton and James Ayers, went to the Kurzmann residence on July 7, 2005. Benton observed that Lea had a black eye and bruising on her right cheek, upper lip, and on her shoulder and arms. Ayers confirmed that Lea had a black eye, some swelling, and discoloration of her lip. Ayers also observed that Lea had finger marks on her arms. Lea explained that she sustained her facial injuries when Kurzmann drop-kicked a football that struck her in the face. According to Lea, the finger marks on her arms were from "rough sex."

Lea told the probation officers that she and her husband had an argument on July 3rd. She left the house in a car and parked somewhere. When Lea returned home the next day, the argument with Kurzmann continued. During this argument, Kurzmann hit her with the football. Ayers did not remember asking Lea how many times the football had hit her; how-

ever, it seemed to him that there was "more than one blow or strike" on Lea's face.

Williams, Ayers, and Benton testified at the contested VOP hearing consistent with the foregoing facts. The defense called only Lea Kurzmann. According to Lea's testimony, she and her husband were out back playing "monkey in the middle" by throwing a football back and forth and having the dog chase the football. Kurzmann allegedly kicked the football, it bounced off the fence, and hit Lea in the face. Kurzmann found this incident funny, which made Lea very angry and upset. Lea went inside, grabbed her daughter, and left for the restaurant across the street "to get a soda." Inside the restaurant she ran into Williams, who "automatically assumed the worse because she knew about the history between Mike and [Lea]." Lea refused to let Williams call the police and testified that she never told Williams that Kurzmann hit her. Notably, Lea did not testify that she told Williams that Kurzmann hit her with a football. According to Lea, she had a "bit of a black eye" from being hit by the football. She explained that she was anemic and bruised easily, and that the bruises on her arms were from "rough sex."

After hearing the testimony from Williams, Ayers, Benton, Lea, and several other witnesses, the Superior Court judge who presided over the VOP hearing (the "VOP judge") concluded that Kurzmann violated his probation by assaulting Lea on July 4th, 2005.[1] The judge expressly based his finding on William's testimony, noting that "I found ... Williams to be a very credible witness based, on large part, upon my observations of her manner when she testified." Even though Williams re-

---

1. The judge also concluded that Kurzmann committed a technical violation of his probation by failing to fulfill the requirement that he cooperate with DFS. In resentencing Kurz-

mann, however, the judge stated that he "did not hold the non-cooperation" against the defendant.

lated Lea's hearsay statements, the judge concluded that the statements fell within the present sense impression and excited utterance exceptions to the hearsay rule. In contrast to his credibility finding about Williams, the VOP judge expressly concluded that Lea was not a credible witness. Having carefully considered the evidence, the judge concluded "I do not think that Lea's getting hit accidentally with a football would have caused her to behave as she did in front of ... Williams. I do think getting assaulted violently by Kurzmann would produce that kind of behavior...."

The VOP judge also relied upon the nature of Lea's injuries to support his finding: "Lea had multiple points of trauma to her face, including a black eye, a busted lip, and a swollen cheek." The multiple points of trauma, in the judge's view, were inconsistent with getting hit by a football. Accordingly, the VOP judge revoked Kurzmann's probation. For the suspended Second Degree Assault charge, the judge resentenced Kurzmann to four years at Level 5, with credit for time served, the full term of the original sentence. For the first two of the suspended Endangering charges, the judge sentenced

Kurzmann to 1 year at Level 5; and for the last suspended Endangering charge, to one year at Level 5, followed by six months at Level 4 work release. Kurzman now appeals claiming that the VOP judge committed numerous errors. We address these claims *seriatim.*

## DISCUSSION

### 1. Alleged prosecutorial misconduct

■ Kurzmann argues that we should reverse his conviction because of the prosecutor's alleged misconduct throughout the VOP hearing. He cites three instances of alleged misconduct in which the prosecutor "repeatedly misstated the evidence and argued facts not in evidence." It is well-established that prosecutors may not misstate or misrepresent the evidence presented at trial.[2] According to Kurzmann, the judge that presided over the VOP hearing relied on these false statements as if they were evidence when he rendered his decision and that, therefore, we should reverse and remand for a new VOP hearing.

■ As a general matter, we review claims of prosecutorial misconduct *de novo* to determine whether the conduct was improper or prejudicial.[3] "Not every im-

---

**2.** *Flonnory v. State,* 893 A.2d 507, 540 (Del. 2006) (citing *Hunter v. State,* 815 A.2d 730, 735 (Del.2002)); *Hughes v. State,* 437 A.2d 559, 567 (Del.1981) ("It is unprofessional conduct for the prosecutor intentionally to misstate the evidence or mislead the jury as to the inferences it may draw.") (quoting *ABA Standards, Prosecution and Defense Functions* (1971)). *See also ABA Criminal Justice Standards, Prosecution Function,* Standard 3–5.5, Opening Statement ("The prosecutor's opening statement should be confined to a statement of the issues in the case and the evidence the prosecutor intends to offer which the prosecutor believes in good faith will be available and admissible. A prosecutor should not allude to any evidence unless there is a good faith and reasonable basis for believing that such evidence will be tendered and admitted in evidence."); Standard 3–5.6(b),

Presentation of Evidence ("A prosecutor should not knowingly and for the purpose of bringing inadmissible matter to the attention of the judge or jury offer inadmissible evidence, ask legally objectionable questions, or make other impermissible comments or arguments in the presence of the judge or jury."); Standard 3–5.8(a), Argument to the Jury ("In closing argument to the jury, the prosecutor may argue all reasonable inferences from evidence in the record. The prosecutor should not intentionally misstate the evidence or mislead the jury as to the inferences it may draw.") available at *http://www.abanet.org/crimjust/ standards/pfunc—toc. html*

**3.** *Flonnory,* 893 A.2d at 538 (citations omitted).

proper remark, however, requires reversal."[4] To the extent we determine that prosecutorial misconduct occurred, we then engage in a four-factor inquiry to determine the prejudicial impact of the improper conduct examining: (1) the closeness of the case; (2) the centrality of the issue affected by the alleged error; (3) the steps taken to mitigate the effects of the alleged error; and (4) whether the prosecutor's statements were repetitive errors that require reversal because they cast doubt on the integrity of the judicial process.[5] If the defense counsel does not object to the prosecutor's misconduct and the trial judge does not intervene *sua sponte*, however, we will review for plain error.[6]

■ This case presents a variation on the usual theme addressing the law governing prosecutorial misconduct, because here the alleged instances of prosecutorial misconduct occurred during a contested VOP hearing at which a Superior Court judge sat as the trier of fact. Most cases involving prosecutorial misconduct arise when the alleged misconduct occurs in front of a jury. This variation is important because "[a] judge, sitting as a trier of fact, is presumed to have made his verdict only on the admissible evidence before him and to have disregarded that which is inadmissible."[7] Thus, in order to obtain reversal on the grounds of prosecutorial misconduct in this VOP hearing, Kurzmann must: (1) show that the prosecutor did in fact engage in misconduct by misstating the evidence and arguing facts not in evidence; (2) he must rebut the presumption that the VOP judge made his decision only on the admissible evidence before him and disregarded the allegedly inadmissible and improper prosecutorial statements by making a showing that the trial judge actually relied upon these misstatements in reaching his result; and (3) he must show that the VOP judge's reliance was either plain error or unfairly prejudicial under the *Hughes–Hunter* analysis. If Kurzmann fails to establish any one, the VOP judge's decision must stand.

### A. Opening Statement.

■ In her opening statement—the first instance of alleged misconduct—the prosecutor said:

> This defendant ... has been dealing with issues of violence and substance abuse for many, many years. He has had difficulty in dealing with relationships for all that time.
>
> He [Kurzmann] is continuing to offend. Even after he pled guilty in Superior Court, there were two more arrests that went to Family Court, and those

---

4. *Daniels v. State*, 859 A.2d 1008, 1011 (Del. 2004) (citation omitted).

5. *Flonnory*, 893 A.2d at 538 (citing *Hughes*, 437 A.2d at 569; *Hunter*, 815 A.2d at 738).

6. *Morris v. State*, 795 A.2d 653, 657 (Del. 2002) ("Because defense counsel did not object at trial to the prosecutor's statements and the Superior Court did not interview sua sponte, we review for plain error.") (citing Supr. Ct. R. 8; *Trump v. State*, 753 A.2d 963, 964–65 (Del.2000); *Robertson v. State*, 596 A.2d 1345, 1356 (Del.1991) (parentheticals omitted)); *Williams v. State*, 803 A.2d 927, 928 (Del.2002).

7. *Burke v. State*, 692 A.2d 411, 1997 Del. LEXIS 95, *5–6 (Del.1997) (quoting *United States v. Cardenas*, 9 F.3d 1139, 1156 (5th Cir.1993)); *See e.g.*, *Liggett v. People*, 135 P.3d 725, 2006 Colo. LEXIS 441, *25 (Colo.2006) ("In the context of a bench trial, the prejudicial effect of improperly admitted evidence is generally presumed innocuous. [T]here is a presumption that all incompetent evidence is disregarded by the court in reaching its conclusions, and the judgment will not be disturbed unless it is clear that the court could not have reached the result but for the incompetent evidence.") (citations and quotations omitted);

charges [sic] ultimately we couldn't go forward because Lea wouldn't appear. During the case that I have pending in Superior Court, DFS became involved. This was a result of that incident where the children witnessed both assaults.

It is difficult to determine exactly which statements Kurzmann alleges are objectionable because he did not expressly quote the statements. Moreover, he cited and provided only one page in the appendix for each alleged instance of misconduct. Because he cited and provided only one page in the appendix for each allegedly improper statement, it is difficult to determine with certainty the objectionable statements, because in his briefs Kurzmann loosely paraphrased the improper comments.

▇ When deciding whether a comment is improper prosecutorial misconduct, our cases often turn on the nuances of the language and the context in which the statements were made.[8] Because prosecutorial misconduct claims are very fact specific and sensitive, in the future, an appellant alleging improper prosecutorial comment in any context should quote in his opening brief the entire allegedly improper statement, specifically indicate the objectionable portions of that statement, and append to the brief all relevant portions of the transcript where the "misconduct" can be confirmed.

Defense counsel did not object to the prosecutor's statement, either during or after she finished. Contrary to Kurzmann's suggestion on appeal, in her opening statement, the prosecutor never once stated or argued that "the defendant has a consistent history of battering his wife."[9] The prosecutor's statements that arguably lend themselves to the defendant's interpretation were that Lea Kurzmann was a domestic violence victim, "who is living with abuse, [and] has been living [page break][10] with abuse for a number of years . . .," that Kurzmann "has been dealing with issues of violence and substance abuse for many, many years," and that Kurzmann is "continuing to offend." In his reply brief, Kurzmann does not dispute that the State offered evidence "that there was a past history of domestic violence. . . ." Nevertheless, Kurzmann contends, the State offered no evidence that Lea failed to cooperate with the prosecution or police investigations.[11] Accordingly, we will assume that Kurzmann's focus on the alleged prosecutorial misconduct during the opening statement is limited to the allegedly false statement: "Even after [Kurzmann] pled guilty in Superior Court,

8. Compare Thompson v. State, 886 A.2d 1279, 2005 Del. LEXIS 423, *4 (Del.2005) (Order) (addressing the improper comment "The State asks that you go back not seeking to find reasonable doubt, but to seek the truth.") and Smith v. State, 2006 WL 1725610, 2006 Del. LEXIS 218, *33–36 (Del.2006) (addressing, among other things, the comment "It is your duty to find the truth in this case. To look at the totality of the case, the case as a whole, to decide what you believe about this case and decide what the truth is" and distinguishing Thompson).

9. Opening Br. Pg 5.

10. This statement began on A–3 of the transcript and continued onto A–4. Kurzmann provided only A–4 in his appendix to this appeal, therefore, we assume that Kurzmann is not claiming that the last clause of this sentence is improper because he did not include the previous page of the transcript, which included the first part of this sentence. In any event, the statement is not improper or prejudicial given the context of this case.

11. Reply Br. Pg 1. (". . . [T]he state offered no evidence that Lea Kurzmann failed to cooperate with [the] prosecution. *The state did offer evidence that there was a past history of domestic violence, **which is not disputed,** but the state did not offer proof that Lea Kurzmann in any way failed to cooperate with any police investigations.*") (emphasis added).

there were two more arrests that went to Family Court, and those charges [sic] ultimately we couldn't go forward because Lea wouldn't appear." We are satisfied that there was competent evidence in the record to support that statement.

James Ayers testified that Lea had recanted her story of abuse in previous incidents. Ayers further testified that after the arrest of February 28, "similar things" (i.e., recantation) happened:

> They [Lea and Kurzmann] were both charged. There is [sic] no witnesses. *People don't show up.* There is also a violation report issued back in 2001 in which the very same thing happened that Lea called probation after [Kurzmann] hit her. She was afraid. Another day or two later, she goes out to the residence, and the story changes. She hits a log or branch and hits her face, her head on the picnic table. There was a history of this type of denial. (emphasis added).

We note that the prosecutor's opening statement came *before* the testimony of the witnesses, was relatively short, and was informal. Her opening statement anticipated Ayers's testimony. The prosecutor's statement "we couldn't go forward" was arguably inconsistent with the fact that the State did in fact elect to prosecute Kurzmann in Family Court on the February 2005 charge, but in his opening statement defense counsel quickly pointed this fact out to the VOP judge. Moreover, it is possible to interpret "we couldn't go forward" in a manner consistent with Ayers's testimony. As defense counsel indicated in his opening statement, there was "zero evidence" before the Family Court Commissioner when she dismissed five of the charges against Kurzmann. The prosecutor may have been implying that the State

could not go forward successfully because Lea recanted, did not show up, or did not cooperate. As Ayers testified, there were no witnesses, "people [including Lea] [did not] show up." Nevertheless, even if this one statement was misconduct because it misstated facts and "argued facts not in evidence," as we discuss below, Kurzmann still has not overcome the presumption that the VOP judge did not rely upon this fact in rendering his decision.

### B. Summation

■ Kurzmann complains that the prosecutor argued in her summation that the State "was concerned about the safety of the [Kurzmanns'] children because there are repeated incidents of violence in front of the children." Kurzmann never explains why this was prejudicial, cites to the record to show why it was a misstatement, or attempts to indicate that the trial judge improperly relied upon the statement. The Statement at issue follows:

> . . . . The State's concern is for the safety of the children. The State is convinced that the children, specifically Joanna, Mr. Kurzmann's child, is [sic] being repeatedly exposed to domestic violence. . . . She has been present for a number of incidents for which he has been both convicted and simply arrested for in the past. She was a witness for the charges that he is on probation for before this Court.

Defense counsel did not object at the time of the statement or after the prosecutor finished. Nor did he attempt to set the record straight. Defense counsel simply argued that there was no allegation in the violation report regarding the children and that it was not fair for him to be required to defend against something that was not alleged in the report.[12]

12. Although Kurzmann did not argue that this particular statement raised due process issues, we are satisfied that Kurzmann was not

in fact required to defend against an allegation about harm to the children not alleged in the violation report. From the record in its

Defense counsel did not object, perhaps, because the record largely supports the prosecutor's statement. Williams testified that when Lea related the details of the July 4 incident to her, Lea recalled that "the child was in the van, and that is when [Kurzmann] assaulted her while she was in the van." Williams further testified that when Lea walked into the restaurant with Joanna that there was "blood all over the child." Clearly there is evidence to support the fact that Joanna observed the July 4 incident. There is also evidence in the record to support the fact that Joanna observed the assault to which Kurzmann pleaded guilty in April 2004 and for which he was on probation at the time of the July 4th incident. One Count in the indictment to which Kurzmann pleaded guilty in April 2004 stated that he "did commit assault against Lea Kurzmann knowing that the crime was witnessed by a child, Joanna Kurzmann, a member of victims [sic] family." We are satisfied that there is record support for the prosecutor's statement and that she did not misstate evidence or argue facts not in evidence. Again, even assuming this statement was improper, Kurz-

mann has not overcome the presumption that the VOP judge only relied upon admissible evidence when rendering his decision.

## C. Sentencing Statement

In his opening brief, Kurzmann suggests that, before sentencing, the prosecutor misstated the facts and argued facts not in evidence by "argu[ing] that [Kurzmann] has a complete history of systematic battering that cannot be controlled." The prosecutor actually said:

> The pattern here is that he is going to hurt her and she is simply unable or willing at this point to resist the battering. If it was just the two of them, perhaps none of us should be concerned, but there are three small children involved. They are so involved that the two of them [the Kurzmanns] thought it was fitting to bring them here today, which I find extremely offensive.
>
> The State's position is that he needs to be in jail. The only way the children won't be exposed to violence is if he is in jail, because she is not going to keep them away from him.[13]

entirety, it is clear that the State proceeded against Kurzmann based on his assault on Lea and various other technical probation violations.

**13.** One page earlier in the transcript the prosecutor stated:

> Your honor, Mr. Kurzmann, I don't believe, will ever change his spots. He is a batterer. He has been a batter for years and he will continue to be a batterer until he either gets too old or too infirmed to hit or there is some other kind of miracle that occurs in his life. . . . He has been a[sic] battering Lea for many years. The file in my office is contained in a box because there have been so many arrests. Most of them have not [begin page cited in transcript] resulted in convictions because Lea has either not appeared because she has fought with us every time we tried to serve her or she came in and recanted on the stand every time.

Kurzmann did not cite this statement in its entirety (although the page of the transcript he did cite includes the fragment at the end). Given the relevant portion of the transcript included in his appendix, we assumed that Kurzmann was concerned with the statement we quoted in the main text of this opinion, particularly in light of the fact that Kurzmann included the statement quoted in this footnote at a later portion in the appendix to support a different argument (A–21). The statement quoted in this footnote, nevertheless, includes some of the same type of alleged misconduct we discussed above. Kurzmann did not argue on appeal that this statement was an additional instance of misconduct. For the reasons cited throughout this opinion, even if Kurzmann had argued that this statement was improper, we are satisfied that it did not constitute reversible error.

The prosecutor's comments might be hyperbolic argument,[14] in which the prosecutor made legitimate inferences from the evidence at the VOP hearing,[15] but they are supported by the record, are not misstatements, and, in context, are not improper in any way. Moreover, as noted above, Kurzmann expressly conceded in his reply brief that "the state did offer evidence that there was a past history of domestic violence...." For these reasons we are satisfied that Kurzmann cannot establish that the prosecutor engaged in misconduct by misstating the evidence.

Kurzmann misconstrues the prosecutor's statements by implying that the state argued that "Kurzmann [was] guilty of a charge after a court has found him not guilty...." He focuses on the February 2005 incident and the disposition in Family Court and suggests that the State argued and consequently the VOP judge impermissibly relied upon this incident to establish Kurzmann's history of violence when the State offered "actual evidence of only *one* conviction for domestic violence." [16]

 The foregoing analysis of the actual statements about which Kurzmann complains notwithstanding, Kurzmann has simply failed to offer sufficient record support to rebut the presumption that the VOP judge made his verdict only upon the admissible evidence before him and that he disregarded the prosecutor's allegedly false statements.[17] In an attempt to rebut this presumption, Kurzmann argues that the VOP judge impermissibly relied upon *multiple assaults* when rendering his decision (including the February 2005 assault that went to trial in Family Court). In so

doing, Kurzmann, perhaps mistakenly, misinterprets the VOP judge's statements. When he discussed Lea's credibility the VOP judge noted:

> Morever, [Lea] had multiple motives not to tell the truth. It is obvious to me, given *Kurzmann's prior assaults on this woman* which led to a conviction for assault in the second degree, that she had many reasons to fear him and many reasons to accommodate her testimony to fit his view of what happened.

Kurzmann quotes the italicized portion of the above statement to argue that the VOP judge relied upon the February 2005 incident as support for his decision and sentence. We cannot accept Kurzmann's interpretation. His focus on the "s" at the end of "assaults" in a phrase where the VOP judge is clearly discussing the second degree assault charge to which Kurzmann pleaded guilty does not rebut the presumption. Because Kurzmann has (1) failed to show that the prosecutor actually engaged in misconduct at all and (2) failed to rebut the presumption that the VOP judge rendered his decision only upon the admissible evidence before him, we need not engage in a *Hughes–Hunter* or plain error analysis. For these reasons, Kurzmann's first argument fails.

Before discussing Kurzmann's second claim, we think it necessary to discuss briefly claims of prosecutorial misconduct on appeal in general. The phrase "prosecutorial misconduct" is not a talismanic incantation, the mere invocation of which will automatically lead to a reversal. This Court has always taken claims of prosecu-

---

**14.** *See Flonnory,* 893 A.2d at 540.

**15.** *See Hooks v. State,* 416 A.2d 189, 204 (Del. 1980) ("The prosecutor in his final summation should not be confined to a repetition of the evidence presented at trial. He is allowed and expected to explain all the legitimate inferences of the appellants' guilt that flow from that evidence.") (citation omitted); *Morris,* 795 A.2d at 659.

**16.** Reply Br., pg. 2 (emphasis added).

**17.** *Burke,* 692 A.2d 411, 1997 Del. LEXIS 95, *5–6.

torial misconduct very seriously and will continue to do so in the future.[18] Nevertheless, we do not condone the magic bullet approach to appeals loosely based on "prosecutorial misconduct." Before making a claim of prosecutorial misconduct on appeal, defense counsel should be sure that there are ample grounds for the claim, because accusing a prosecutor of prosecutorial misconduct has potentially serious implications.[19]

## 2. The Superior Court judge did not sentence Kurzmann with a closed mind

 In his second argument on appeal, Kurzmann contends that the VOP judge sentenced him with a closed mind. We review the Superior Court's sentencing of a criminal defendant for an abuse of discretion.[20] It is well-established that appellate review of sentences is extremely limited.[21] Thus, generally speaking, our review ends upon a determination that the sentence is within the statutory limits prescribed by the legislature.[22] Where the sentence falls within the statutory limits, we consider only whether it is based on factual predicates which are false, impermissible, or lack minimal reliability, judicial vindictiveness or bias, or a closed mind.[23] "A judge sentences with a closed mind when the sentence is based on a preconceived bias without consideration of the nature of the offense or the character of the defendant."[24] Moreover, "the judge must have an open mind for receiving all information related to the question of mitigation."[25]

Kurzmann contends that the V OP judge erred by (1) relying upon "impermissible and false evidence" when sentencing him; and (2) imposing an unduly harsh sentence for Kurzmann's first violation.

Immediately before he sentenced Kurzmann the judge stated:

> Mr. Kurzmann, you have a long history of violence toward Lea Kurzmann. It appears to me that the first time that you had pretty much unrestrained access to her, another incident of violence occurred. I have no reason to believe, based on what you have actually done, that anything is going to change. Given that, I am going to sentence you as follows....

Kurzmann cites the italicized portion of the above statement to support his argument:

> In sentencing [Kurzmann] the [judge] relied upon facts that were argued by the State but for which they offered no evidence. Specifically the [judge] states "Mr. Kurzmann, you have a long history of violence towards Lea Kurzmann." While not expanding on why [he] came to this conclusion, it is reasonable to assert that [the judge] relied upon the statements of the State which were unsupported by any facts. They [sic] facts are that Mr. Kurzmann was on proba-

18. *See e.g. Hunter v. State,* 815 A.2d 730 (2002).

19. *See Price v. State,* 858 A.2d 930 (Del.2004).

20. *Walt v. State,* 727 A.2d 836, 840 (Del. 1999).

21. *Mayes v. State,* 604 A.2d 839, 842 (Del. 1992).

22. *Id.* (quoting *Ward v. State,* 567 A.2d 1296, 1297 (Del.1989)).

23. *Weston v. State,* 832 A.2d 742, 746 (Del. 2003) (citing *Siple v. State,* 701 A.2d 79, 83 (Del.1997); *Mayes,* 604 A.2d at 842–43).

24. *Weston,* 832 A.2d at 746 (citing *Ellerbe v. State,* 755 A.2d 387, 2000 WL 949625, at *1 (Del.2000)).

25. *Weston,* 832 A.2d at 746 (citing *Shelton v. State,* 744 A.2d 465, 513 (Del.2000))

tion for almost a year and half [sic] with no actual violations when he was violated for the matter under review which allegedly involved domestic violence. *While it is impossible to determine exactly what the Judge relied upon when he noted that Mr. Kurzmann has a long history of Domestic Violence, it is improbable to believe that he only relied on [Kurzmann's] conviction and his first violation of probation.* It is more likely that the [judge] used the arguments by the state, which used false evidence and in fact mislead [sic] the [judge].[26]

First, this statement in Kurzmann's opening brief appears to be inconsistent with his statement in the reply brief: "the state *did* offer evidence that there was a past history of domestic violence, which is not disputed...." That statement in the reply brief is, however, consistent with the VOP judge's remark at sentencing. Second, even looking only to the assault charge to which Kurzmann pleaded guilty and the July 4th incident, the evidence in the record supports the trial judge's statement.[27] Third, and most importantly, Kurzmann attempts to flip the presumption that we discussed above.[28] He would have us interpret the VOP judge's statement, which even he concedes is ambiguous,[29] to conclude that the VOP judge relied upon incompetent and inadmissible evidence when he rendered Kurzmann's sentence. That we will not do. The VOP judge did not rely upon an impermissible factual basis when he sentenced Kurzmann and Kurzmann has failed to convince us otherwise.

We are also satisfied that the VOP judge did not sentence Kurzmann with a closed mind. Kurzmann suggests that the VOP judge ignored the fact that he had not been convicted of a new offense and was a "productive member of society for a year and half." We disagree. The VOP judge heard from defense counsel and twice from Kurzmann himself before he imposed the sentence. It is clear that the VOP judge considered the nature of the offense and the character of the defendant and that he received information from Kurzmann and defense counsel on the question of mitigation. Moreover, there is nothing in the record that supports the conclusion that the VOP judge had a preconceived bias. Accordingly, the VOP judge did not act with a closed mind nor did he abuse his discretion when he sentenced Kurzmann to the unexecuted portion of his suspended sentences for Second Degree Assault and three counts of Endangering the Welfare of a Child with credit for time served.

### 3. The Superior Court judge properly revoked Kurzmann's probation even though the State never charged Kurzmann with a new criminal offense

The VOP judge concluded that Kurzmann violated his probation by assaulting Lea on July 4, 2005, thereby committing a new criminal offense. Kurzmann argues on appeal, that he "should not have had his probation violated for committing a new

---

26. Opening Br. pgs. 7–8. (emphasis added).

27. *See also* Williams's testimony ("When I first came, I attending a hearing in Family Court when they gave Lea full custody of the children and absolutely no custody to Mr. Kurzmann *because of the history of domestic violence.*"); Lea Kurzmann's testimony (In response to a question from defense counsel on direct examination about speaking with Williams in the restaurant on July 4th:

"[Williams] automatically assumed the worse *because she knew about the history between Mike and I.*")

28. *See Supra* pgs. 10–11.

29. "[I]t is impossible to determine exactly what the Judge relied upon when he noted that Mr. Kurzmann has a long history of Domestic Violence...." Opening Br. pgs. 7–8, *Supra.* pg. 22.

criminal offense when he [was] not ... cahrged [sic] with any criminal offenses." Kurzmann claims that it is reasonable to believe that the State did not file new charges because the State did not believe that it could obtain a conviction. Because the State opted to file a VOP rather than a formal prosecution, Kurzmann was allegedly deprived of the constitutional rights (including specifically the Sixth Amendment) that would otherwise have been available at a criminal trial. As Kurzmann summarizes his argument:

> While a defendant does not enjoy the same rights to a trial when having a probation hearing, it should be of concern to the [C]ourt that if the State is unable to convict someone of a new crime because of lack of evidence, they can rely on hearsay to prove their case and violate that probation instead of given [sic] a defendant a formal opportunity to defend themselves [sic]. The Judge in this case should not have violated the Defendant [sic] probation based on committing a crime that was not charged....

It is unclear to us exactly what Kurzmann is arguing. He appears to suggest that we should adopt a bright line rule that requires the State to charge a probationer with a crime before proceeding with a VOP petition alleging that a probationer violated the terms of his probation by committing a new criminal offense. In his reply brief, Kurzmann argues that whenever the State cannot proceed to trial against a probationer because it does not have sufficient evidence to convict him beyond a reasonable doubt that it is "contrary to justice" for the State to "cho[o]se to violate his probation instead where a lower standard of proof and lack of evidence rules apply." Finally, Kurzmann may be arguing that Williams's testimony relating Lea's hearsay statements was insufficient to support a finding that Kurzmann committed a new criminal offense. In any of these scenarios, Kurzmann is mistaken.[30]

■■■■ It is well established that probation is an "act of grace" and that a VOP judge has broad discretionary power when deciding whether or not to revoke probation.[31] Accordingly, we review a Superior Court judge's revocation of a defendant's probation for an abuse of discretion.[32] The State bears a lower burden of proof during a VOP hearing than during a criminal trial.[33] In a VOP proceeding, the State need prove by only a preponderance of the evidence that a violation of probation occurred.[34] To do so the State must present "some competent evidence" to "reasonably satisfy the judge that the conduct of the probationer has not been as good as required by the conditions of probation."[35] Furthermore, "the rules of evidence applicable to criminal trials are relaxed" in VOP proceedings, and hearsay evidence is admissible.[36]

---

**30.** The State suggests that Kurzmann did not raise these arguments before the Superior Court judge who presided over the VOP hearing, and that, accordingly, we should review for plain error. Sup.Ct. Rul. 8. The standard of review in this case is not dispositive because even under the *de novo* standard Kurzmann proffers, Kurzmann's arguments clearly have no merit.

**31.** *Collins v. State*, 897 A.2d 159, 160 (Del. 2006) quoting *Brown v. State*, 249 A.2d 269, 271 (Del.1968).

**32.** *Id.* (quoting *Brown v. State*, 249 A.2d at 272).

**33.** *Jenkins v. State*, 862 A.2d 386, 2004 Del. LEXIS 549, * 10 (Del.2004)(Order).

**34.** *Id.* citing *Weaver v. State*, 779 A.2d 254, 259 (Del.2001); *Mann v. State*, 768 A.2d 470, 2001 Del. LEXIS 91, *5 (Del.2001)(Order).

**35.** *Collins*, 897 A.2d at 160 (citation omitted); *Jenkins*, 862 A.2d 386, 2004 Del. LEXIS 549 at *10–11 (citing *Brown*, 249 A.2d at 272).

**36.** *Collins*, 897 A.2d at 160.

■ From the foregoing statement of law it should be clear that Kurzmann's first argument is without merit. The State can proceed against a probationer by filing a VOP petition alleging a new criminal offense, even if the State concedes that it does not have enough evidence to prosecute the probationer and to establish beyond a reasonable doubt that he has committed the underlying criminal offense. Because probation is an "act of grace," the State need only present "some competent evidence" to prove the violation asserted and to reasonably satisfy the VOP judge that the probationer's conduct has not been as good as required under the conditions of probation. There is nothing in our case or statutory law that supports Kurzmann's argument. We see little purpose in requiring the State to charge and prosecute a probationer with a crime arising out of the conduct for which the State could also proceed in VOP hearing when the State has only enough evidence to prove by a preponderance that the probationer committed the underlying act. Although the probationer may have lesser constitutional safeguards at a VOP hearing than at a trial, the probationer can only be subjected to the sentence originally "imposed, or any lesser sentence, [or] if imposition of sentence was suspended, [may be subject] to any sentence which might originally have been imposed."[37] The probationer cannot be sentenced as if convicted of the new criminal offense, but merely loses the probationary status granted for the underlying criminal offense to which he pleaded guilty or for which he was convicted at a time when his full panoply of constitutional rights did apply.

■ Kurzmann's second argument—that Williams's testimony relating Lea's hearsay statements was insufficient to support a finding that he committed an assault—is also misplaced. In *Collins v. State*, we recently considered whether a police officer's testimony at a VOP hearing relating hearsay statements of two eyewitnesses was sufficient to link the probationer to the crime he allegedly committed.[38] There, the probationer was charged with violating the conditions of his probation by committing burglary, criminal mischief, and terroristic threatening.[39] At the VOP hearing, the State called one witness, the investigating police officer, who testified that the probationer's ex-girlfriend:

> told him that the [probationer] had come to her home, argued with her, broke her telephone and then left. She said he later returned, kicked in the door, threatened her and smashed a figurine on the floor before he fled. [The police officer] further testified that he observed scuffmarks on the ex-girlfriend's front door, the shattered figurine on the floor, a hole in the wall from the door handle, and a broken telephone. He also testified that he questioned the downstairs neighbor, [the probationer's] aunt, who explained to him that she saw [the probationer] throw a beer can down the stairs and threaten his ex-girlfriend before fleeing to another apartment building....
>
> [The probationer] denied the charges at his violation of probation hearing. Neither [the probationer's] ex-girlfriend nor his aunt testified, nor did the State produce any eyewitnesses or physical evidence linking [the probationer] to the alleged crime.... [40]

We first noted the rule that "probation cannot be revoked solely upon the testimony of a witness with no first-hand knowledge of the events constituting the viola-

---

37. 11 Del. C. § 4334(c).

38. 897 A.2d 159.

39. *Id.* at 160.

40. *Id.*

tions."[41] Moreover, "where the defendant has not admitted violating his probation, some competent evidence linking the defendant to the crime is necessary."[42] Applying this law, we held that the State had not presented sufficient competent evidence to link the probationer to the crime:

> Although physical evidence of the damage to the apartment may have indicated that criminal conduct had occurred, it did not connect [the probationer] to that crime. Without more, [the police officer's] testimony at the hearing was not sufficient competent evidence to prove that [the probationer's] conduct violated his probation requirements.[43]

We are satisfied that *Collins* is distinguishable on its facts. Here, as in *Collins*, Williams related Lea's hearsay statements and Lea's statements directly implicated Kurzmann in the alleged criminal offense. Williams also testified that she observed Lea's physical injuries. That testimony is similar to the police officer's testimony about physical damages in *Collins*. Unlike in *Collins*, however, Williams testified about Lea's demeanor as Lea related her statements. Williams's testimony about Lea's demeanor gave the VOP judge a basis to conclude that Lea's hearsay statements fell within the present sense and excited utterance exceptions to the hearsay rule. Kurzmann did not appeal these rulings. Moreover, Williams testified that Kurzmann followed Lea into the restaurant and "denied that he hurt [Lea]." Finally, Lea's testimony established that Kurzmann was the one who injured her, even though she testified that he did so by drop-kicking a football and hitting her in the face. These facts, taken together, are "sufficient competent evidence" to link Kurzmann to the alleged assault on Lea.

Accordingly, Kurzmann's third argument on appeal fails.

### 4. The Superior Court judge did not err by using medical testimony from a non-expert to establish a fact.

Kurzmann's final argument on appeal is that the VOP judge erred by relying on medical testimony from a non-expert to establish a fact upon which he based his conclusion that Kurzmann assaulted his wife. Kurzmann specifically refers to James Ayers's testimony. The relevant testimony follows:

> Q (prosecutor): So her [Lea's] explanation to you on [July 7th] was that he did hit her with a football accidentally, but that it was during this continued argument?
>
> A (Ayers): Continued argument.
>
> Q: Which had actually caused her to flee from the argument the night before?
>
> A: Correct. It seemed implausible. She said she was a very good athlete in high school. As a matter of fact on the softball team and talking about catching balls. This seemed implausible that she was doing this and could not have blocked a football.
>
> Q: Did you ever ask her how many times the football had hit her?
>
> A: I may have, but I don't remember specifically. It did seem that there were more than one blow or strike on her face.

Based in part on Ayers's testimony, the judge concluded:

> The *other factor* I relied upon [in finding that Kurzmann assaulted Lea], *in addition to ... Williams' testimony*, is the nature of Lea's injuries. Lea had

---

41. *Id.* (citation and quotation omitted).

42. *Id. at* 161 (citations omitted).

43. *Id. at* 162.

multiple points of trauma to her face, including a black eye, a busted lip, and a swollen cheek.

Jim Ayers, who observed these injuries, testified that, in his view, these injuries were inconsistent in getting hit with a football. I agree and conclude that Lea's injuries were consistent with an assault, but not with a football hitting her. (emphasis added).

Kurzmann argues, first, that the trial judge abused his discretion when he relied on Ayers's "expert" medical testimony to establish multiple points of trauma because "Ayers did not testify to any prior experience in the field of medicine" and was not "competent to determine the cause of a physical injury based on visual representations." Second, Kurzmann contends, that the "evidence ... in this case simply does not substantiate" the VOP judge's findings that Lea's injuries were the result of an assault and were inconsistent with getting hit by a football.

 Kurzmann never objected to the admissibility of Ayer's "medical testimony," nor did he attempt to explore Ayer's "medical opinion" that there was more than "one blow or strike" on Lea's face during cross-examination. Accordingly, we review the admission of this testimony for plain error.[44] "Plain error is limited to material defects that are apparent on the face of the record and that are basic, serious and fundamental in their character, and which clearly deprive an accused of a substantial right, or which clearly show manifest injustice."[45] Moreover, the error complained of must be so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial pro-

cess.[46] The VOP judge did not plainly err by relying on Ayer's testimony that Lea appeared to have "more than one blow or strike on her face." Moreover, we agree with the State that Ayers testimony was not of the sort that required any scientific, technical or other specialized knowledge and thus was not "expert" testimony.[47]

Kurzmann's second argument is more troubling. When the VOP judge made his findings of fact he noted that Ayers testified that, "in his view, [Lea's injuries] were inconsistent in getting hit with a football." Ayers actually testified that it seemed implausible that a good high school athlete, who played softball and caught balls could not have blocked a football. Even though we are constrained to conclude that Ayers's testimony does not support one sentence of the VOP judge's interpretation of the testimony, that does not require a reversal. Immediately after insignificantly misstating Ayer's testimony, the VOP judge noted that he agreed with what he mistakenly thought was Ayers's opinion testimony: that Lea's injuries—"multiple points of trauma to her face, including a black eye, a busted lip, and a swollen cheek"—were inconsistent with getting hit by a football. The VOP judge was free to rely on Ayers's un-objected-to testimony to establish that there was more than "one blow or strike on Lea's face." From this testimony, the VOP judge could have inferred and concluded that the multiple points of trauma were inconsistent with getting hit by a football—despite the fact that he may have incorrectly recalled Ayers's testimony.

---

44. Del.Supr. Ct. R. 8.

45. *Jones v. State*, 888 A.2d 232, 2005 Del. LEXIS 328, \*2 (Del.2005) (quoting *Wainwright v. State*, 504 A.2d 1096, 1100 (Del. 1986), *cert. denied*, 479 U.S. 869, 107 S.Ct.

236, 93 L.Ed.2d 161 (1986)). (quotation omitted).

46. *Wainwright*, 504 A.2d at 1100.

47. *See* D.R.E. 701.

■■■■■■■■■■■■■

■■ Even assuming for the sake of argument that the VOP judge erroneously relied upon Ayer's testimony to conclude that Lea's injuries were inconsistent with getting hit by a football, we are satisfied that the record still supports the VOP judge's conclusion that Kurzmann violated his probation. To justify his finding that Kurzmann violated his probation by assaulting Lea, the VOP judge primarily relied upon Williams's testimony about Lea's statements and Lea's demeanor at the time she entered into the restaurant. He found that Williams's testimony was consistent with the undisputed facts: (1) that Lea entered the restaurant with fresh injuries; (2) that Lea admitted to being angry with Kurzmann at the time of the alleged assault; and (3) that three days after the assault Benton and Ayers observed injuries that were consistent with a physical assault.[48] The VOP judge also found that Lea's statements to Williams fell within hearsay exceptions and were competent evidence to establish the violation. Finally, the VOP judge reasoned that he did not "think that Lea's getting hit accidentally with a football would have caused her to behave as she did in front of ... Williams. I do think getting assaulted violently by Kurzmann would produce that kind of behavior on Lea's part." The VOP judge could have stopped there. The finding that Lea's injuries were inconsistent with being hit by a football was essentially superfluous. The facts in the record and the foregoing rationale constitute sufficient grounds for the VOP judge's conclusion that Kurzmann violated his probation. The "other factor" that the VOP judge

relied upon merely bolstered this conclusion. In other words, even if the VOP judge's reliance on Ayer's testimony about the nature of Lea's injuries was misplaced, there is simply no reversible error in this case.

Kurzmann also contends that he was denied the minimum requirements of due process because the evidence cited by the trial judge "simply [did] not substantiate his findings." We have concluded that Kurzmann is mistaken and that the evidence cited by the VOP judge did substantiate his findings. Thus, there was no error. Again, even if we assume that the VOP judge erred by impermissibly relying upon the nature of Lea's injuries, there was still sufficient evidence in the record to support the conclusion that Kurzmann violated his probation by assaulting Lea, entirely independent of the VOP judge's conclusion that Lea's injuries were inconsistent with getting hit by a football.

### CONCLUSION

For the foregoing reasons, the judgment of the Superior Court is **AFFIRMED.**

---

**48.** It is important to note the distinction between Lea's injuries being *consistent* with a physical assault and being *inconsistent* with getting hit by a football. Even if Ayers's testimony did not establish that Lea's injuries were inconsistent with getting hit with a foot-

ball, Ayers's, Benton's, and Williams's testimony clearly established that Lea's injuries— a busted lip, a black eye, and a swollen cheek—were consistent with a physical as-

sault, and the VOP judge could have so con-
cluded.