BRANDON WARNER,[1] Respondent Below-Appellant,
v.
DEPARTMENT OF SERVICES FOR CHILDREN, YOUTH & THEIR FAMILIES, DIVISION OF FAMILY SERVICES, Petitioner Below-Appellee.
No. 228, 2008.
Supreme Court of Delaware.
Submitted: October 8, 2008.
Decided: November 26, 2008.
Before STEELE, Chief Justice, HOLLAND and RIDGELY, Justices.

ORDER
MYRON T. STEELE, Chief Justice.
This 26th day of November 2008, upon consideration of the appellant's brief filed pursuant to Supreme Court Rule 26.1, his attorney's motion to withdraw, and the responses of the Department of Services for Children, Youth & Their Families, Division of Family Services ("DFS"), and the Court Appointed Special Advocate ("CASA"), it appears to the Court that:
(1) Counsel for the respondent-appellant, Brandon Warner ("Father"), filed an appeal from the Family Court's April 9, 2008 opinion and order terminating his parental rights in his minor child, Ava. Father's counsel has filed an opening brief and a motion to withdraw.[2] Despite proper notification by his counsel, Father has presented no appeal points for consideration by this Court. Indeed, despite counsel's continued efforts to locate Father, his whereabouts are unknown. DFS and CASA have moved to affirm the Family Court's judgment. We agree and AFFIRM.
(2) The record reflects that Ava has been in the care of DFS since March 29, 2003, the day after she was born. As of that date, three of the children of Ava's mother, Talia Grimes ("Mother"), already had been found dependent on the grounds of lack of income, lack of housing and possible substance abuse. In March of 2004, Father's paternity was confirmed. Multiple hearings on the issue of termination of Mother and Father's parental rights occurred between May 2004 and March 2005. On September 16, 2005, Mother consented to the termination of her parental rights and the Family Court terminated Father's parental rights. Father then filed an appeal in this Court. On July 17, 2006, the Court reversed the Family Court's termination of Father's parental rights and remanded the matter to the Family Court for further proceedings, including the development of a plan for reunification of Father with Ava.[3]
(3) The reunification case plan for Father was presented by DFS at a Family Court hearing on August 17, 2006. Father was serving a prison sentence at that time. The case plan provided for visitation with Ava after Father's release from prison and also required Father to obtain and maintain safe and appropriate housing, obtain and maintain employment, provide for Ava's medical needs, attend Strengthening Families parenting classes, comply with all conditions of probation, incur no new criminal charges, and undergo a substance abuse and mental health evaluation. Father, in consultation with his counsel, agreed to the terms of the plan.
(4) A review hearing was scheduled for November 16, 2006. Father did not appear. The Family Court learned that Father had failed to return to Level IV Work Release after a medical appointment and that a warrant had been issued for his arrest. While Father had visited with Ava four times during the month of October while he was on work release, he failed to appear for a scheduled visit in November. Father did not appear for the next review hearing on March 1, 2007 and his whereabouts remained unknown. As of the next review hearing on March 31, 2007, Father was back in custody and facing trial on the felony charge of Escape in the Second Degree. A request by Father to have visitation with Ava at the prison was denied by the Family Court. On July 20, 2007, DFS filed a motion in the Family Court seeking establishment of a permanency plan of termination of parental rights with respect to Father. On August 22, 2007, Father was found guilty of Escape in the Second Degree and was sentenced as a habitual offender to one year of Level V incarceration.[4]
(5) The record reflects that the hearing on DFS's motion to terminate Father's parental rights took place on March 7, 2008. Father appeared and was represented by counsel. The Family Court heard testimony from Susan Bennett, Ava's Social Worker from Children and Families First, Jean Parkinson, a Family Crisis Therapist at DFS, Michelle McTier, Ava's foster mother, William Shepard, the CASA for Ava, as well as Father. Ms. Bennett, Ms. Parkinson, and Mr. Shepard all testified about their observations of Ava within her foster home setting. All three professionals agreed that Ava was doing well in her foster home, that her foster home was the only home she had ever known, that she had no emotional attachment to Father, and that her foster parents should be permitted to adopt her.
(6) Father testified that he had six months remaining on his prison sentence. He stated that, after his release, he intended to work at either Old Navy or Auto Zone in Seaford, Delaware. He planned to live with his mother initially, but stated that he had been approved for Section VIII housing. Father also stated that he intended to continue attending Narcotics Anonymous, Alcoholics Anonymous and Tempo anger management meetings. Father testified that, even though he had not seen Ava for many months and had only visited with her a total of four times, he believes she has bonded with him. Father stated that he would be able to provide Ava with the stable home and nurturing she needs.[5]
(7) The Family Court may terminate parental rights if DFS proves by clear and convincing evidence the existence of a statutory basis for termination, and that termination is in the best interests of the child.[6] Where, as here, termination is based upon a failure to plan, DFS also must prove by clear and convincing evidence the existence of at least one additional statutory element,[7] and that DFS made bona fide, reasonable efforts to reunite the family.[8] In this case, DFS also sought termination of Father's parental rights based on the ground of abandonment.[9]
(8) On appeal from the Family Court's termination of parental rights, this Court will uphold the Family Court's factual findings if they are sufficiently supported by the record and are not clearly wrong.[10] To the extent that the Family Court's rulings implicate questions of law, this Court's standard of review is de novo.[11] This Court will not disturb inferences and deductions that are supported by the record and that are the product of an orderly and logical deductive process.[12]
(9) We have reviewed the record, including the transcript of the Family Court hearing, in detail and conclude that there is clear and convincing evidence in the record supporting the Family Court's finding that Father failed to plan for Ava's physical needs or mental and emotional health and development.[13] Moreover, there is clear and convincing evidence of the existence of at least one other required statutory factor for termination of parental rights.[14] We also conclude that there is clear and convincing evidence in the record supporting the Family Court's finding that Ava was abandoned by Father.[15] We further conclude that the record supports the Family Court's finding that DFS made bona fide, reasonable efforts to reunify Father with Ava.[16] Finally, we conclude that the Family Court properly determined, based upon a detailed weighing of the statutory best interests factors, that termination of Father's parental rights was in Ava's best interests.[17]
NOW, THEREFORE, IT IS ORDERED that the motions to affirm of DFS and CASA are GRANTED. The judgment of the Family Court is AFFIRMED. The motion to withdraw is moot.
NOTES
[1] By Order dated May 14, 2008, the Court sua sponte assigned a pseudonym to the appellant. Supr. Ct. R. 7(d). In this Order, we also assign pseudonyms to the mother of the parties' minor child and the minor child.
[2] See Supr. Ct. R. 26.1(a), which provides for the continuing obligation of trial counsel in an appeal from a termination of parental rights.
[3] Waters v. Division of Family Services, 903 A.2d 720, 726 (Del. 2006) (citing In re Burns, 519 A.2d 638, 643 (Del. 1986); Del. Code Ann. tit. 29, § 9003 (13)).
[4] Father's prior criminal record includes previous felony convictions in 2006, 2005 and 2000, as well as multiple misdemeanor convictions in 2003, 2002, 2001, 2000 and 1999.
[5] Because Father did not have documentation to support his efforts at obtaining employment and housing, the Family Court afforded him an extension of time in which to provide it. The record does not reflect that Father ever provided the Family Court with any such documentation.
[6] Shepherd v. Clemens, 752 A.2d 533, 536-37 (Del. 2000); Del. Code Ann. tit. 13, § 722.
[7] Del. Code Ann. tit. 13, § 1103(a) (5).
[8] In re Hanks, 553 A.2d 1171, 1179 (Del. 1989).
[9] Del. Code Ann. tit. 13, § 1103(a) (2).
[10] In re Stevens, 652 A.2d 18, 23 (Del. 1995).
[11] In re Heller, 669 A.2d 25, 29 (Del. 1995).
[12] Solis v. Tea, 468 A.2d 1276, 1279 (Del. 1983).
[13] Del. Code Ann. tit. 13, § 1103(a) (5).
[14] Id.
[15] Del. Code Ann. tit. 13, § 1103(a) (2).
[16] In re Hanks, 553 A.2d 1171, 1179 (Del. 1989).
[17] Del. Code Ann. tit. 13, § 722.