**Raymond L. SHORT, Respondent Below, Appellant,**

v.

**DEPARTMENT OF SERVICES FOR CHILDREN, YOUTH & THEIR FAMILIES, Petitioner Below, Appellee.**

No. 201,2009.

Supreme Court of Delaware.

Submitted: Sept. 9, 2009.

Decided: Sept. 29, 2009.

Deborah I. Gottschalk, Esquire, Community Legal Aid Society, Inc., Wilmington, Delaware, for appellant.

Craig R. Fitzgerald, Esquire, Department of Justice, Wilmington, Delaware, for appellee.

Before HOLLAND, BERGER and JACOBS, Justices.

HOLLAND, Justice.

The respondent-appellant, Raymond L. Short, Sr. ("Short"), appeals from a Family Court final judgment terminating his parental rights in his son, Raymond Short, Jr. ("Raymond Jr.").[1] On appeal, Short argues only that the Family Court erred in determining that any of the statutory prerequisites for terminating parental rights enumerated in title 13, section 1103(a) of the Delaware Code were present. The petitioner-appellee, Department of Services for Children, Youth & their Families ("DFS") and the Court Appointed Special Advocate ("CASA") argue that: the Family Court only had to find one of the section 1103(a) factors to terminate Short's parental rights; and DFS established all five section 1103(a)(5) factors by clear and convincing evidence. We find no merit to Short's arguments.

### Facts

Raymond Jr. was born in July 2004. At that time, Short was incarcerated. Raymond Jr. spent the first year and a half of his life in the homes of various maternal and paternal relations in New York and Delaware. Short was released from incarceration in April 2005. Raymond Jr.'s mother (the "Mother") had issues with DFS regarding one of her other children, and as a result, Short and the Mother acceded to DFS' request that Raymond Jr. be placed under guardianship. Raymond Jr. was placed in the care of Denise Darrow, a family friend, in January 2005. Both the Mother and Short moved in and out of incarceration over the next few years.

During the time Raymond Jr. was under the guardianship of Darrow, he spent much of his time with maternal relatives.

---

1. We assigned pseudonyms to the parties, *sua sponte,* under Supreme Court Rule 7(d).

During part of that time, Short lived with those relatives and provided some care for Raymond Jr., but he never provided "primary support."

DFS received reports that Darrow was neglecting the child, and DFS petitioned the Family Court for custody of Raymond Jr. On March 7, 2008, the Family Court transferred custody of Raymond Jr. to DFS, which placed Raymond Jr. in foster care. On April 9, 2008, the Family Court held an adjudicatory hearing, at which Short told the court that he was living with his mother in New York. DFS advised the court that it would schedule a home visit to evaluate the suitability of placing Raymond Jr. with his paternal grandmother in New York.

On May 7, 2008, the Family Court held a review hearing, which Short failed to attend. At that hearing, DFS entered Short's reunification case plan into evidence. That case plan provided for Short to work towards reunification with his son by: (1) getting a job, (2) obtaining safe and stable housing, (3) undergoing a substance abuse evaluation, and (4) complying with all court orders. Raymond Jr.'s DFS caseworker testified that she was unable to discuss the reunification plan with Short because he failed to contact DFS or provide DFS with any contact information. That caseworker also testified that DFS had scheduled visitation for Short on April 17, 2008, but Short never showed up.

On August 12, 2008, the Family Court held another review hearing. Again, Short did not appear. DFS reported that Short's mother's home in New York was not an acceptable placement for Raymond Jr. DFS also noted that Short had an outstanding capias against him. Short's counsel informed the court that Short had entered into a job placement program and was seeking housing. At the hearing, the Family Court determined that Short was not actively working towards reunification with his son.

On November 18, 2008, the Court scheduled a permanency hearing. Short did not attend that hearing either. Raymond Jr.'s caseworker testified that she had not had any contact with Short since April 2008. Another DFS worker testified that Short had had no contact with Raymond Jr. since the child entered DFS custody. The next day, the Family Court ordered a change in goal to termination of parental rights. On March 10, 2009, the Family Court held a termination hearing, at which Short did appear. After taking testimony (including Short's) and hearing arguments, the Family Court issued an order terminating Short's parental rights.

### *Family Court's Decision*

The Family Court found that the statutory prerequisite for a termination of parental rights under title 13, section 1103(a)(5) had been met, because Short had "failed to plan" for his son. The Family Court orally explained that it found Short "failed to plan" because:

> [Short] has not been participating in [the Family Court] proceedings until the very last couple of hearings because he realized at that point that his parental rights were in jeopardy. But at that point it was too little, too late. He has provided no financial support to this child. He has had no visitation with this child, no emotional support for the child, virtually nothing for the child since the child entered care. . . . [T]he [c]ourt finds that he has failed to plan adequately for the child's physical needs or mental and emotional health and development. . . . The [c]ourt does find that . . . an appropriate case plan was drafted for Father by DFS. It encompassed the elements that the Court expected would be on it to address Father's issues[,] had

Father engaged with DFS and followed the case plan, the [c]ourt has no doubt that he would have been reunified with his child, but he chose not to for various reasons.

The Family Court went on to find that all five elements of title 13, section 1103(a)(5) had been established: Raymond Jr. had spent over a year in DFS custody; Short had a history of neglect, abuse or lack of care for his son; Short was incapable of discharging parental responsibilities due to repeated incarceration; Short was unable to assume legal and physical custody and pay for his son's support. Lastly, a failure to terminate parental rights would result in emotional instability for Raymond Jr. The Family Court also determined that terminating Short's parental rights was in Raymond Jr.'s "best interests" under title 13, section 722 of the Delaware Code.

### Standard of Review

■ Before terminating a parent's rights in a child, the Family Court must engage in a two-step analysis.[2] First, the Family Court must find that one of the grounds for termination enumerated in title 13, section 1103(a) has been established. Second, the Family Court must determine that the best interests of the child, as defined in title 13, section 722, weigh in favor of the termination. Both steps require proof by clear and convincing evidence.[3] Short challenges only the first step of the Family Court's analysis. Whether DFS has established the statutory grounds to terminate parental rights is a legal issue that we review *de novo*.[4]

### Termination Grounds

■ Grounds for the termination of parental rights exist where: (1) a parent has failed to plan adequately for the child physical needs or emotional health; and (2) the child has been in DFS custody for at least a year.[5] Short does not present any reasoned argument negating the finding that he "failed to plan adequately" for Raymond Jr.'s "physical needs or mental and emotional health and development." As the Family Court found, Short's repeated failure to cooperate with DFS, to work toward his case plan, or even to visit his son, established a failure to plan for Raymond Jr.

The question then becomes whether DFS established any of the statutory grounds for termination. Although the Family Court found that all five section 1103(a)(5) factors were present, one factor alone suffices to support termination. Here, the Family Court found, under title 11, section 1103(a)(5)(a)(1), that Raymond Jr. had been in DFS custody for over one year.

---

2. Del.Code Ann. tit. 13, § 1103(a); *Div. of Fam. Servs. v. Hutton*, 765 A.2d 1267, 1271 (Del.2001).

3. *Div. of Fam. Servs. v. Hutton*, 765 A.2d at 1271–72.

4. *See In re Heller*, 669 A.2d 25, 29 (Del.1995) (citing *In re Stevens*, 652 A.2d 18, 23 (Del. 1995)).

5. Del.Code Ann. tit. 13, § 1103(a)(5): The parent or parents of the child, or any person or persons holding parental rights over the child, are not able, or have *failed, to plan adequately for the child's physical needs or mental and emotional health and development, and 1 or more of the following conditions are met:*

   a. In the case of a child in the care of the Department or a licensed agency:
   1. *The child has been in the care of the Department or licensed agency for a period of 1 year,* or for a period of 6 months in the case of a child who comes into care as an infant, or there is a history of previous placement or placements of this child[.] (emphasis added).

This finding (that Raymond Jr. was in DFS custody for over one year) established a valid basis for termination and should end our inquiry. Short argues, however, that although Family Court Rule 216 requires a permanency hearing to be conducted "360—420 days" from the date a child enters DFS custody, that Rule is only a guideline that does "not trump [the] father's due process right to a reasonable opportunity for reunification."[6] That argument lacks merit. Short relies on *Waters v. Division of Family Services.*[7] In *Waters,* we held that a child's right to a timely, *i.e.,* within one year, permanency decision did not "trump" the due process rights of an unknown father who came forward after termination proceedings had commenced. This Court reasoned that Due Process required that Waters be provided a meaningful case plan and reunification services before the Family Court could terminate his parental rights.[8]

*Waters* is distinguishable. Short was not an unknown father who came forward after termination proceedings had commenced. Short had a case plan and DFS was willing to provide Short with reunification services. Short did not, however, begin making serious efforts at reunification until it was "too little, too late." Short's failure does not elevate the Family Court's strict application of the one year in DFS custody factor[9] to a Due Process violation.

### Conclusion

The judgment of the Family Court is affirmed.

---

6. *Waters v. Div. of Fam. Servs.,* 903 A.2d 720, 727 (Del.2006).

7. *Id.*

8. *Id.* (noting that reunification services are not required in cases of abandonment).

9. Del.Code Ann. tit. 13, § 1103(a)(5)(a)(1).