IN THE SUPREME COURT OF THE STATE OF DELAWARE

EUDALDO NAVARRO, § 
 § No. 141, 2019
Defendant Below, §
Appellant, §
 § Court Below—Superior Court
v. § of the State of Delaware
 §
STATE OF DELAWARE, § Cr. ID Nos. 1709006495 (N) &
 § 1712003000 (N)
Plaintiff Below, §
Appellee. §

Submitted: August 27, 2019
Decided: October 15, 2019

Before **VAUGHN**, **SEITZ**, and **TRAYNOR**, Justices.

## **ORDER**

After consideration of the appellant's Supreme Court Rule 26(c) brief, the State's response, and the record on appeal, it appears to the Court that:

(1) On June 13, 2018, after a two-day trial in Criminal ID No. 1709006495, a Superior Court jury found the appellant, Eudaldo Navarro, guilty of menacing as a lesser included offense of aggravated menacing and second degree unlawful imprisonment as a lesser included offense of first degree unlawful imprisonment. As discussed in more detail below, these convictions arose from Navarro's actions against his wife in September 2017.

(2) On August 6, 2018, Navarro pled guilty in Criminal ID No. 1712003000 to second degree attempted kidnapping, aggravated menacing, and

second degree conspiracy. These convictions arose from armed strangers, at Navarro's behest, forcing Navarro's wife and children to leave their home to go to Navarro in December 2017.

(3) The Superior Court sentenced Navarro in both criminal cases to a total of twenty-three years and one month of Level V incarceration, suspended after six years for decreasing levels of supervision. This is Navarro's direct appeal.

(4) At the trial in Criminal ID No. 1709006495, Navarro's wife testified that she and Navarro were separated as of September 2017. Navarro was not a U.S. citizen and was not legally in the U.S. On September 8, 2017, Navarro's wife came home to find Navarro there with their children. Navarro wanted to speak to her, but she wanted to take their children to dance lessons. Navarro's sister arrived and picked up the children.

(5) Navarro eventually convinced his wife to go inside the house with him. He then grabbed her arm, pushed her into a bedroom, locked the door, and threatened her. He also took away her cell phone and car keys. He grabbed a kitchen knife and threatened to kill her and himself. He would not let her leave the bedroom. He repeatedly slashed a framed picture of Marilyn Monroe that she had in the bedroom.

(6) To escape from Navarro, his wife lied to him, telling him that she had cancer and needed to go to the hospital. Navarro took her to the hospital in his GMC Yukon truck. During an ultrasound procedure, she told hospital staff about

2

Navarro's threats. She declined their offers to call the police. She contacted the police the next day after speaking with her family.

(7) After speaking with Navarro's wife, the investigating police officer tried to contact Navarro. He went to Navarro's workplace where he found Navarro's truck, but not Navarro. A knife and picture of Marilyn Monroe were in the truck. Navarro's wife identified the knife as the one that Navarro had used to threaten her. The police were unable to recover any fingerprints from the knife and did not submit it for DNA testing.

(8) Navarro's sister testified that both her brother and her sister-in-law asked her to pick up the children on September 8, 2017. According to her, both of them seemed happy when she picked up the children. Later that day her sister-in-law called to say she was at the hospital because she was not feeling well and that one of her relatives would pick up the children. The jury found Navarro guilty of menacing as a lesser included offense of aggravated menacing and second degree unlawful imprisonment as a lesser included offense of first degree unlawful imprisonment. The jury found Navarro not guilty of terroristic threatening and possession of a deadly weapon during the commission of a felony.

(9) As noted earlier, Navarro pled guilty to second degree attempted kidnapping, aggravated menacing, and second degree conspiracy in Criminal ID No.

3

1712003000, when Navarro instructed armed strangers to force Navarro's wife and children to leave their home to go to Navarro in December 2017.

(10) The Superior Court judge who presided over his trial, but not his guilty plea, sentenced him in both cases on March 15, 2019. The Superior Court sentenced Navarro as follows: (i) for second degree attempted kidnapping, fifteen years of Level V incarceration, suspended after four years for decreasing levels of supervision; (ii) for aggravated menacing, five years of Level V incarceration suspended after one year for eighteen months of Level III probation; (iii) for second degree conspiracy, two years of Level V incarceration, suspended for eighteen months of Level II probation; (iv) for second degree unlawful imprisonment, one year of Level V incarceration; and (v) for menacing, thirty days of Level V incarceration suspended for one year of Level III probation.

(11) On appeal, Navarro's appellate counsel ("Counsel") filed a brief and a motion to withdraw under Supreme Court Rule 26(c). Counsel asserts that, based upon a complete and careful examination of the record, there are no arguably appealable issues. Counsel informed Navarro of the provisions of Rule 26(c) and provided Navarro with a copy of the motion to withdraw and the accompanying brief.

(12) Counsel also informed Navarro of his right to identify any points he wished this Court to consider on appeal. Navarro has raised points for this Court's

4

consideration. The State has responded to the Rule 26(c) brief and has moved to affirm the Superior Court's judgment.

(13)  When reviewing a motion to withdraw and an accompanying brief under Rule 26(c), this Court must: (i) be satisfied that defense counsel has made a conscientious examination of the record and the law for arguable claims; and (ii) conduct its own review of the record and determine whether the appeal is so totally devoid of at least arguably appealable issues that it can be decided without an adversary presentation.[1]  Navarro's arguments on appeal may be summarized as follows: (i) he should not have been sentenced to jail time for misdemeanors when he was sentenced to probation for more serious felonies; (ii) his sentences should not have exceeded guidelines established by the Delaware Sentencing Accountability Commission ("SENTAC") because he accepted responsibility for the crimes and apologized to the victims; (iii) his unfamiliarity with English and mental health were issues throughout the proceedings; (iv) the prosecutor referred to comments his daughter made at sentencing that do not appear in the police reports and acted vengefully toward him after the trial; and (v) his counsel failed to make sufficient arguments at his sentencing.

---

[1] *Penson v. Ohio*, 488 U.S. 75, 83 (1988); *Leacock v. State*, 690 A.2d 926, 927-28 (Del. 1996).

(14) Our review of a sentence is limited to determining whether the sentence is within the statutory limits defined by the General Assembly.[2] If the sentence falls within statutory limits, we consider only whether it is based on factual predicates which are false, impermissible, or lack a minimal indicia of reliability, judicial vindictiveness or bias, or a closed mind.[3] All of Navarro's sentences fall within statutory limits.[4]

(15) To the extent Navarro suggests that he received probation for all of the felonies he committed, he is incorrect. He received the greatest amount of Level V time—fifteen years of Level V incarceration suspended after four years—for the most serious felony he committed, second degree kidnapping (a class C felony). He is also incorrect in stating that he only received probation for aggravated menacing; he was actually sentenced to one year of Level V incarceration for aggravated menacing. The Superior Court did sentence Navarro to probation for his least serious felony (two years of Level V time suspended for eighteen months of Level

---

[2] *Kurzmann v. State*, 903 A.2d 702, 714 (Del. 2006).

[3] *Id.*

[4] Second degree kidnapping is a class C felony with a maximum statutory penalty of up to fifteen years of Level V incarceration. 11 *Del. C.* § 783; 11 *Del. C.* § 4205(b)(3). Aggravated menacing is a class E felony with a maximum statutory penalty of up to five years of Level V incarceration. 11 *Del. C.* § 602(b); 11 *Del. C.* § 4205(b)(5). Second degree conspiracy in a class G felony subject to a maximum statutory penalty of up to two years of Level V incarceration. 11 *Del. C.* § 512; 11 *Del. C.* § 4205(b)(7). Second degree unlawful imprisonment is a Class A misdemeanor with a maximum statutory penalty of up to one year of Level V incarceration. 11 *Del. C.* § 781; 11 *Del. C.* § 4206(a). Menacing is an unclassified misdemeanor subject to maximum statutory penalty of thirty days of Level V incarceration. 11 *Del. C.* § 602(a); 11 *Del. C.* § 4206(c).

II probation for second degree conspiracy) and Level V time for two of his misdemeanors (thirty days of Level V incarceration for menacing and one year of Level V incarceration for second degree unlawful imprisonment), but those sentences are within the statutory limits.

(16) The Superior Court did choose to impose sentences that exceeded the SENTAC guidelines (although not as much as the State had requested), but Navarro has no legal or constitutional right to appeal a sentence authorized by statute simply because it does not conform to the sentencing guidelines established by SENTAC.[5] In imposing the sentences, the Superior Court acknowledged Navarro's acceptance of responsibility in his guilty plea and his mental health issues, but also noted the aggravating factors of the victim's vulnerability and the prior abuse of the victim. As to Navarro's request for reduction of his sentence so that he can begin the deportation process sooner, he did not raise this claim below so we will not address it for the first time on appeal.[6]

(17) Navarro's unfamiliarity with English and mental health issues were addressed in the proceedings below. A translator was present for all of Navarro's appearances, including his trial, guilty plea, and sentencing, in the Superior Court.

---

[5] *Mayes v. State*, 604 A.2d 839, 845 (Del. 1992).

[6] Supr. Ct. R. 8. The record reflects that Navarro did not wish to plead guilty to any crimes that included minimum-mandatory time because such a plea would have a different impact on his immigration status than a plea to crimes that did not include minimum-mandatory time. The parties ultimately agreed on a plea to crimes that did not include minimum-mandatory time.

The record reflects that Navarro was communicating with his counsel throughout the trial. Navarro's statements during his guilty plea colloquy and sentencing reflect that he understood the proceedings.

(18) As to Navarro's mental health, the Superior Court questioned him during his plea colloquy about the medications he was taking for his anxiety and depression. The Superior Court also inquired about his previous admissions to mental hospitals. Navarro's counsel stated that he believed Navarro understood what he was doing and was competent to plead guilty. The record supports this statement. Navarro has not asserted any cognizable claim based on his unfamiliarity with English or his mental health.

(19) Navarro's prosecutorial misconduct claims are without merit. Navarro alleges that the prosecutor referred at sentencing to statements his daughter made that do not appear in the police reports, but does not provide any factual support for this allegation. The record reflects that Navarro's daughter spoke to the police after armed strangers, at Navarro's behest, made her, her brother, and her mother leave their home in December 2017 to go to Navarro. In arguing that the prosecutor's reference to his daughter asking one of the armed men why her father kept trying to hurt the family led the Superior Court judge to conclude wrongly that there was a previous history of abuse, Navarro ignores that the judge presided over his trial for acts he committed against his wife in September 2017.

8

(20) The record also does not support Navarro's claim that the prosecutor acted vengefully toward him after the trial. The prosecutor was not required to offer Navarro a plea deal, but did so. The prosecutor also agreed that Navarro could plead guilty to crimes that did not include minimum-mandatory time to address Navarro's concerns regarding the impact on his immigration status.

(21) We construe Navarro's complaints regarding his counsel's arguments at sentencing as an ineffective assistance of counsel claim. This Court does not consider ineffective assistance of counsel claims on direct appeal and does not do so here.[7]

(22) This Court has reviewed the record carefully and has concluded that Navarro's appeal is wholly without merit and devoid of any arguably appealable issue. We also are satisfied that Counsel has made a conscientious effort to examine the record and the law and has properly determined that Navarro could not raise a meritorious claim in this appeal.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED. The motion to withdraw is moot.

BY THE COURT:

*/s/ Collins J. Seitz, Jr.*
Justice

---

[7] *Desmond v. State*, 654 A.2d 821, 829 (Del. 1994).

9