IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| JARROD PENN, | § | |
| | § | No. 247, 2019 |
| Defendant Below, | § | |
| Appellant, | § | |
| | § | |
| v. | § | Court Below–Superior Court |
| | § | of the State of Delaware |
| STATE OF DELAWARE, | § | |
| | § | Cr. ID 1802000784 (N) |
| Plaintiff Below, | § | |
| Appellee. | § | |

Submitted: November 5, 2019
Decided: January 16, 2020

Before **VALIHURA**, **VAUGHN**, and **TRAYNOR**, Justices.

## ORDER

Upon consideration of the appellant's Supreme Court Rule 26(c) brief, the State's response, and the record on appeal it appears to the Court that:

(1)     On September 26, 2018, a Superior Court jury found the appellant, Jarrod Penn, guilty of disregarding a police officer's signal, leaving the scene of an accident, and driving without a license.  On May 24, 2019, the Superior Court sentenced Penn as a habitual offender for disregarding a police officer's signal to five years of Level V incarceration, suspended after six months for twelve months of Level III probation.  The court imposed fines for leaving the scene of an accident and driving without a license.  This is Penn's direct appeal.

(2)    On appeal, Penn's counsel ("Counsel") has filed a brief and a motion to withdraw under Rule 26(c).  Counsel asserts that, after a complete and careful examination of the record, there are no arguably appealable issues.  Counsel informed Penn of the provisions of Rule 26(c) and provided Penn with a copy of the motion to withdraw and the accompanying brief.  Counsel also informed Penn of his right to identify any points he wished this Court to consider on appeal.  Penn has raised several issues for this Court's consideration.  The State has responded to the issues raised by Penn and has moved to affirm the Superior Court's judgment.

(3)    The standard and scope of review applicable to the consideration of a motion to withdraw and an accompanying brief under Rule 26(c) is twofold:  (a) this Court must be satisfied that defense counsel has made a conscientious examination of the record and the law for arguable claims; and (b) this Court must conduct its own review of the record and determine whether the appeal is so totally devoid of at least arguably appealable issues that it can be decided without an adversary presentation.[1]

(4)    The evidence presented at trial fairly reflects the following. At approximately 12:30 a.m. on February 2, 2018, on-duty Wilmington Police Officer Dominic Brown was traveling westbound on Fourth Street in the City of Wilmington

---

[1] *Penson v. Ohio*, 488 U.S. 75, 83 (1988); *McCoy v. Court of Appeals of Wisconsin*, 486 U.S. 429, 442 (1988); *Anders v. California*, 386 U.S. 738, 744 (1967).

when he observed what appeared to be a two-car collision between a red Chevrolet Impala and another vehicle at the intersection of Fourth and Jackson Streets.[2] Officer Brown witnessed the Impala back up, maneuver around the other vehicle, turn east on Fourth Street, and speed off. As the Impala passed Officer Brown on Fourth Street, Officer Brown observed that the driver of the Impala was an African American, wearing a black hat and black jacket. Officer Brown activated his emergency lights, executed a U-turn, and pursued the Impala.

(5) When the Impala failed to pull over, Officer Brown activated his sirens and radioed to the Wilmington communications center ("WILCOM") that he was in pursuit of a vehicle that had left the scene of a collision. Officer Brown also relayed a description of the Impala to WILCOM. After several blocks, the Impala turned left on West Street and headed north. Officer Brown briefly caught up to the vehicle and was able to transmit the vehicle's registration plate number to WILCOM. Because it was raining heavily and the Impala was driving well in excess of the speed limit, Officer Brown slowed and stopped his pursuit.

(6) Corporal Erik Meese was on patrol in the area when he heard Officer Brown call in the pursuit to WILCOM. Corporal Meese responded to the intersection of West Street and South Park Drive where he immediately identified a

---

[2] Although Officer Brown did not witness the Impala strike the other vehicle, he heard a loud bang—consistent with the sound of a collision—and witnessed the other vehicle—which had been stopped at the traffic signal—lurch into the intersection, as if pushed.

vehicle matching the description Officer Brown had relayed to WILCOM. The Impala had been abandoned in the middle of eastbound lane of South Park Drive. A male, later identified as Penn, was standing near the vehicle's passenger door. Corporal Meese detained Penn for further investigation while he waited for additional units to arrive. Upon investigation, Corporal Meese noted what appeared to be debilitating damage to the Impala's front left bumper. Within minutes, Officer Brown responded to the scene and was able to positively identify the Impala as the vehicle that fled from the accident and Penn as the vehicle's driver. Penn was subsequently arrested and taken into custody. When the arresting officer asked Penn to provide his driver's license, Penn refused. Later, after waiving his *Miranda* rights, Penn admitted to inadvertently causing the accident at the intersection of Fourth and Jackson Streets and to leaving the scene.

(7) As noted earlier, the jury found Penn guilty of disregarding a police officer's signal, leaving the scene of an accident, and driving without a license. The Superior Court deferred sentencing in order to give the State the opportunity to file a motion to have Penn declared a habitual offender under 11 *Del. C.* § 4214(a). Ultimately, the Superior Court granted the State's motion to have Penn declared a habitual offender and sentenced Penn as follows: for disregarding a police officer's signal, as a habitual offender, to five years of Level V incarceration, suspended after

4

six months for twelve months of Level III probation;[3] for leaving the scene of the accident, to a fine in the amount of $230.00; and for driving without a license, to a fine in the amount of $50.00.

(8) Penn's arguments on appeal may be fairly summarized as follows: (i) the Superior Court abused its discretion by delaying sentencing to allow the State additional time to file a motion to declare Penn a habitual offender; (ii) the Superior Court abused its discretion by failing to request a presentence investigation ("PSI") prior to sentencing; (iii) his sentence is illegal because it contains a period of probation; and (iv) trial counsel was ineffective for—among other things—failing to file a motion for return of Penn's property in a separate case that was later dismissed; discussing plea offers with him, despite Penn's allegation that he had advised counsel that he was not amenable to accepting a plea offer; failing to request video footage from a store located along the route of Officer Brown's pursuit of Penn; failing to involve Penn in the jury selection process; failing to request a continuance when the victim did not appear for trial; not asking witnesses questions that Penn had drafted; failing to obtain and introduce a police report allegedly written by another responding officer; failing to subpoena Penn's mother and the other responding officer to testify; and failing to object to the prosecutor's statements that

---

[3] The court also imposed the mandatory fine of $1,150.00 for a subsequent offense of disregarding a police officer's signal. 21 *Del. C.* § 4103(b).

Penn was speeding and had failed to obey traffic signals as he fled the scene of the accident.

(9) Penn first alleges that the trial judge "went against" a prior order of the Superior Court when he denied Penn's request for immediate sentencing and granted the State time to file a motion to declare Penn a habitual offender. Penn claims that the judge presiding over his final case review advised the prosecutor that he needed to submit the State's "habitual offender packet" to Penn's counsel prior to trial. But the transcript of Penn's final case review belies Penn's contention. In fact, the presiding judge did not rule on any aspect of the State's intention to file a motion to declare Penn a habitual offender. Rather, the judge concentrated on ensuring Penn understood the potential sentence he faced, whether he was declared a habitual offender or not, if he rejected the State's plea offer and proceeded to trial.

(10) Turning to Penn's attacks on his sentence, this Court's appellate review of a sentence is extremely limited and generally ends upon a determination that the sentence falls within the statutory limits prescribed by the legislature.[4] Penn contends that the Superior Court should have ordered a PSI before sentencing him, but the decision to order a PSI is left to the discretion of the sentencing judge.[5] Penn

---

[4] *Kruzmann v. State*, 903 A.2d 702, 714 (Del. 2006).

[5] 11 *Del. C.* § 4331(a) ("Upon conviction of any person for any crime and before sentencing, the court *may*, before fixing punishment or imposing sentence, direct an Investigative Services officer to thoroughly investigate and report upon the history of the accused…") (emphasis added).

also alleges that it was his understanding that, if he was sentenced as a habitual offender, the Superior Court could not impose a period of probation. Penn is incorrect. The Superior Court sentenced Penn for disregarding a police officer's signal as a habitual offender as provided by 11 *Del. C.* § 4214(a). Under 11 *Del. C.* § 4214(a), the Superior Court must impose the minimum sentence for the felony prompting the designation of Penn as a habitual offender[6] and may impose a sentence up to life imprisonment.[7] Outside of those parameters, the court is permitted to fashion Penn's sentence as it sees fit and is specifically authorized to impose a period of probation under 11 *Del. C.* §4204(c).[8]

(11) Penn's remaining claims constitute allegations of ineffective assistance of counsel. We will not consider Penn's ineffective assistance of counsel claims for the first time on direct appeal.[9]

(12) The Court has reviewed the record carefully and has concluded that Penn's appeal is wholly without merit and devoid of any arguably appealable issue.

---

[6] This was not Penn's first conviction for disregarding a police officer. As such, it was a Class E Felony, for which there is no minimum period of incarceration.

[7] 11 *Del. C.* § 4214(a) ("The court… may, in its discretion, impose a sentence up to life imprisonment, unless the felony conviction allows and results in the imposition of capital punishment. Under no circumstances may the sentence imposed pursuant to this section be less than the minimum sentence provided for by the felony prompting the person's designation as a habitual offender.").

[8] 11 *Del. C.* § 4204(c) (providing the court with broad discretion in configuring a sentence for any offense other than a Class A Felony).

[9] *Desmond v. State*, 654 A.2d 821, 829 (Del. 1994).

7

We also are satisfied that Counsel has made a conscientious effort to examine the record and the law and has properly determined that Counsel could not raise a meritorious claim in this appeal.

NOW, THEREFORE, IT IS ORDERED that the State's motion to affirm is GRANTED. The judgment of the Superior Court is AFFIRMED. Counsel's motion to withdraw is moot.

BY THE COURT:

*/s/ Karen L. Valihura*_____
Justice

8