IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE )
)
v. ) I.D. No. 1809000343
)
DARRYL GRAYSON, )
)
Defendant. )

Submitted: February 2, 2021
Decided: May 7, 2021

*Defendant's Motion for Postconviction Relief.*
**DENIED**.
*Defendant's Request for Appointment of
Postconviction Counsel.*
**DENIED.**

## ORDER

Before the Court are some motions filed by the defendant *pro se*. One is a motion for postconviction relief alleging ineffective assistance of counsel ("Rule 61"). A second is a request for appointment of counsel in connection with the Rule 61 motion.

1. The Defendant pled guilty to the charges that put him in his current situation. Rule 61 provides that in cases in which the defendant pled guilty, counsel may be appointed to represent him in his Rule 61 proceeding if the following criteria have been satisfied:

   (i)   the conviction has been affirmed by final order upon direct appellate review or direct appellate review is unavailable;

1

(ii) the motion sets forth a substantial claim that the movant received ineffective assistance of counsel in relation to the plea of guilty or *nolo contendere*;

(iii) granting the motion would result in *vacatur* of the judgment of conviction for which the movant is in custody; and

(iv) specific exceptional circumstances warrant the appointment of counsel.

2. Applying these criteria to this case, defendant did not appeal his conviction and, at this point, a right of appeal is not available to him.

3. Defendant's substantive claims are threefold: 1) that counsel failed to raise "proper" arguments in favor of suppression of the evidence against him; 2) that the trial court abused its discretion by giving him a disproportionate sentence compared to his co-defendants; and 3) he has a right to a transcript of all proceedings.

4. As to whether his trial counsel raised proper arguments in his suppression hearing, we begin by noting that this was a wiretap/racketeering case and defense counsel did, in fact, move to suppress the fruits of the wiretap evidence, arguing that there was no probable cause or necessity shown in the affidavit supporting the wiretap authorization. Those issues were fully briefed, argued and decided against Defendant.

5. In his pleading here, Defendant notes that the affidavit supporting the wiretap references a "gang" operating in the Hilltop section of Wilmington.

2

According to the Defendant, the lack of specificity as to which gang was unduly inflammatory. Moreover, Defendant says there was no evidence of any specific gang and the officers' statement was made with reckless disregard for the truth.

6. This argument is about the affidavit of probable cause to support the wiretap, not a claim of inflaming a jury with scary language about the problem of criminal street gangs. It is widely understood that judges will ignore inadmissible, impertinent or unfairly prejudicial evidence in making judicial findings.[1] The affidavit purported to lay out a "Drug Trafficking Organization." Whether it "qualified" as a "gang" depends, one supposes, on one's definition of a "gang".[2] What is certain is that the mere use of the term in an affidavit of probable cause supporting a wiretap warrant does not vitiate the probable cause in any way and would not have resulted in suppression of the evidence derived from the wiretap itself.

---

[1] *See Kurzmann v. State*, 903 A.2d 702, 709 n.7 (Del. 2006) (*citing Burke v. State*, 1997 WL 139813, at *2 (Del. Mar. 19, 1997) ("[A] judge, sitting as a trier of fact, is presumed to have made his verdict only on the admissible evidence before him and to have disregarded that which is inadmissible." (*quoting United States v. Cardenas*, 9 F.3d 1139, 1156 (5th Cir. 1993)))).

[2] Webster's Dictionary defines a "gang" as a) "a group of persons working to unlawful or antisocial ends, b) a group of persons working together, or c) a group of persons having informal and usually close social relations." Perhaps prophetically, the dictionary example of using "gang" in a sentence is "a gang of drug dealers." *Gang*, Merriam-Webster.com Dictionary, https://www.merriam-webster.com/dictionary/gang (last visited May 6, 2021).

3

7. Defendant's second complaint about his attorney is that counsel did not appeal the denial of his suppression motion. But denial of a suppression motion is not a "final order" in a criminal case and cannot be appealed until after a trial and sentencing. And a guilty plea waives all defects in the record except 1) the jurisdiction of the Court, 2) the voluntariness of the plea or 3) the legality of the sentence. Defendant's plea of guilty constituted a waiver of any right to appeal the denial of his suppression motion. Defendant cannot claim the benefits of a bargained plea while at the same time appealing the correctness of the trial court's suppression ruling. Thus, his counsel cannot be ineffective for failing to appeal an order that was not appealable, especially after Defendant accepted the plea bargain offered by the State.

8. Finally, Defendant claims that counsel was ineffective for not challenging the officers' sworn assertions that when the conspirators were speaking on the phone about "blue t-shirts" and "white t-shirts," they were, as averred by the officers, speaking about drug transactions. Defendant has not suggested what they were talking about, but given the rest of the facts sworn to in the probable cause affidavit, t-shirts was unlikely. In other words, Defendant's complaint that the coded language used by the conspirators was too clever to have been deciphered by the average, experienced drug enforcement officer is unconvincing. While all this takes Defendant to the end of a sentence, it does not take him much further. The issue of

probable cause to obtain the wiretaps was raised by counsel and litigated. Indeed, counsel's arguments in favor of suppression were far more compelling than whether the subjects were engaging in "drug talk," but even counsel's better arguments were unsuccessful.

9. Defendant has failed to raise a "substantial" claim of ineffectiveness of trial counsel that might result in reversal of the judgment of conviction or that some exceptional circumstance exists that warrants the appointment of counsel.[3]

10. As to his complaint of a disproportionate sentence, that claim could have been raised on direct appeal, not direct appeal was taken, and the claim is thus waived. But even if the Court were to take on the issue, it is without merit.

11. Under the terms of Defendant's guilty plea, he accepted a sentencing recommendation whereby he understood that 1) he was eligible for Habitual Offender sentencing, 2) he faced a minimum mandatory sentence of 12.5 years, and 3) the State intended to "cap" its recommended Level 5 sentence at 18 years.[4] The State did in fact recommend 18 years of unsuspended Level 5 time and the Court ultimately imposed 15 years – midway between the mandatory minimum and the State's recommendation.

---

[3] Super. Ct. Crim. R. 61(e)(3).
[4] Plea Agreement, D.I. 36.

12. Defendant says some of his co-defendants got less time and he got more. His complaint is not further refined than that and it is not for the Court to guess who or what he has in mind.[5] This was a hierarchical drug racketeering case in which Defendant was identified as one of the ringleaders. The group generally dealt in very large (by Wilmington standards) amounts of heroin and fentanyl. Defendant himself brought with him to Court a miserable criminal history that included prior drug convictions as well as other offenses under Title 11. His role in the organization was somewhere near the top, his criminal history was terrible, and his sentence was less than what he knew the State would "cap" and only modestly more than was mandated by the terms of his plea. His claim to disproportionate treatment at sentencing is not well made out.

13. Finally, Defendant claims he has a right to "review all proceedings leading up to his conviction as well as an open inquiry into the intrinsic fairness of those proceedings."[6] But he relies upon a decision involving the availability of

---

[5] Of the many individuals caught up in this indictment, the State identified defendants Grayson, Walter Battle, and Victor Fairley as the ringleaders. The sentencing records show that Grayson received 15 years of prison time, Battle received 14 years and Fairley received 18 years. Perhaps Mr. Grayson is unfamiliar with his co-defendants' sentences, but they are hardly the stuff of a disproportionate sentence argument.

[6] Def.'s Mot. for Postconviction Relief at 17.

6

transcripts to support a direct appeal.[7] Transcripts to support a collateral attack on a conviction stand in a different position.

14.     The right to transcripts to support postconviction relief has received treatment in Delaware Courts. As Judge Steele commented: "A prisoner has no absolute right to a transcript to assist him in the preparation of a collateral attack on his conviction. Constitutional requirements are met by providing such materials only after judicial certification that they are required to decide the issues presented in a non-frivolous pending case."[8] Decisions made since then make clear that a movant who seeks transcripts at state expense must show that transcripts will clarify or further an argument that the record will demonstrate the violation of a fundamental right.[9] Whether to grant such requests ultimately rests within the sound discretion of the Court.[10]

15.     The Court does not find that the issues raised in Defendant's motion implicate a violation of any of Defendant's fundamental rights and therefore denies his request for transcripts of all proceedings. The Court has already found that Defendant's claims are "insubstantial" as that term is used in Rule 61(e)(3) and

---

[7] *Griffin v. Illinois*, 351 U.S. 12 (1956), *reh'g denied*, 351 U.S. 985 (1956).
[8] *State v. Bordley*, 1989 WL 135691, at *1 (Del. Super. Oct. 26, 1989); *see State v. Ketchum*, 2002 WL 234745, at *1 (Del. Super. Jan. 31, 2002).
[9] *Ketchum*, 2002 WL 234745, at *1.
[10] Super. Ct. Crim. R. 61(d)(3); *see also id.*; *State v. Bordley*, 1989 WL 135691, at *1.

therefore denies his request for appointed counsel. The same reasoning forces the conclusion that it "plainly appears from the motion for postconviction relief and the record of prior proceedings in the case that the movant is not entitled to relief." As such, the motion is subject to summary dismissal.[11]

16.  For all the foregoing reasons, the Court will deny Defendant's motion for relief under Rule 61 and deny his concurrent motion for appointment of counsel.

**IT IS SO ORDERED.**

Charles E. Butler, Resident Judge

---

[11] Super. Ct. Crim. Rule 61(d)(5).