# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STATE OF DELAWARE, | ) | |
| | ) | |
| v. | ) | I.D. No.: 1810013334A |
| | ) | |
| ANGEL ARBOLAY, | ) | |
| | ) | |
| Defendant. | ) | |

*SUBMITTED: September 15, 2023*
*DECIDED: November 7, 2023*

# OPINION AND ORDER

*on Defendant's Motion for Post Conviction Relief –* **DENIED**;
*on Post Conviction Counsel's Motion to Withdraw –* **GRANTED.**

*Michael Cooksey, Deputy Attorney General,* Delaware Department of Justice, 820 N. French Street, 7th Floor, Wilmington, Delaware 19801. Counsel to the State of Delaware.

*Christopher S. Koyste, Esquire,* Law Office of Christopher S. Koyste, LLC, 709 Brandywine Blvd., Wilmington, Delaware 19809. Counsel to Angel Arbolay.

**Jones, J.**

On July 19, 2019, following a nonjury trial, Angel Arbolay was found guilty of: (1) Possession of Deadly Weapon During the Commission of a Felony ("PDWDCF"); (2) Drug Dealing; (3) Tier One Possession; (4) Operating or Attempting to Operate a Clandestine Laboratory ("OAOCL"); (5) Tampering with Evidence; (6) Possession of a Controlled Substance ("PCS"); (7) Resisting Arrest; and (8) Possession of Drug Paraphernalia ("PDP").[1]

On November 15, 2019 Arbolay was sentenced and declared a Habitual Offender.[2] Arbolay appealed the Court's decision with the Delaware Supreme Court.[3] At the time of Arbolay's November 15, 2019 conviction, Arbolay was represented by his then counsel, Andrew J. Meyer, Esquire.[4]

On January 7, 2021, Arbolay filed to proceed *pro se*[5] in the Supreme Court, this request was ultimately granted.[6] On September 14, 2021, the Delaware Supreme Court denied Arbolay's appeal and affirmed the judgment of the Superior Court.[7] On May 31, 2022, Arbolay filed a Motion for Post Conviction Relief and a motion for appointment of counsel.[8] Christopher S. Koyste, Esquire was appointed as counsel for Arbolay.

---

[1] *See* Appendix Volume I for Case No. 181001334A, A9 (2023).
[2] *See* Superior Court Criminal Docket, 9 (Arbolay was sentenced to a mandatory jail term of 25 years with decreasing levels of probation to follow).
[3] *See* Superior Court Criminal Docket for Case No. 1810013334A.
[4] *See* Appendix Volume IV for Case No. 181001334A, A888.
[5] *Id*. at A902.
[6] *See* Appendix Volume I for Case No. 181001334A, A13.
[7] *See* Appendix Volume IV for Case No. 181001334A; Superior Court Criminal Rule 61(e)(1)(i).
[8] *Id*. at A905; Superior Court Criminal Rule 61(e)(1)(i).

1

On September 15, 2023, Mr. Koyste filed a motion to withdraw as Arbolay's counsel pursuant to Rule 61(e)(6), maintaining that there is no merit for relief.[9] Arbolay was afforded an opportunity to respond to Mr. Koyste's motion and filed a response on October 13, 2023.[10]

## FACTUAL BACKGROUND

The Delaware Supreme Court summarized the underlying facts of this case in its decision on direct appeal:

> Around 11:30 p.m. on October 23, 2018, Delaware State Police Officer, Pierre Lawler, assigned to the Governor's Task Force ("GTF") team, was patrolling the area around the Dutch Inn on Route 13 in Minquedale. While in the motel parking lot, Detective Lawler heard a man screaming and yelling "mommy" from one of the rooms. Detective Lawler traced the noise to Room 54, which had an exterior window open. Detective Lawler contacted additional members of GFT for back-up, and the officers approached the room.
>
> Detective Lawler spoke to Arbolay through the motel room window. When Detective Lawler asked Arbolay about the screaming, Arbolay said he was having a domestic. Detective Lawler could only see part of the room through the window and was concerned that there could be at-risk people inside the room. He asked Arbolay if he could come inside the room to make sure nobody else was there. Arbolay initially consented, but after recognizing a different police officer, he refused to open the door,

[9] *See* Docket Item ("D.I.") 83, Motion to Withdraw as Counsel for Case No. 1810013334A.
[10] *See* Superior Court of Delaware ID No. 1810013334A Letter to Angel Arbolay (Sept. 19, 2023) (Petitioner was notified of counsel's Motion on September 19, 2023; his response was due by October 19, 2023).

tried to close the window, and began swallowing pills.

One of the officers deployed a Taser on Arbolay, who fell to the floor. Detective Lawler and another officer climbed through the window. They opened the door so the other officers could enter the room. The police tried to handcuff Arbolay, but he struggled and tried to conceal his hands. After Arbolay was handcuffed, he tried to consume the pills on the floor until he was moved off of the floor. In addition to the pills, two prescription pill bottles with no labels, two blenders of coffee grinders cased with powder, and a bag of suspected cocaine on the night table were in plain view.

Probation Officer Bryan Vettori searched the room. He found a loaded handgun, male clothing, $573.00 in cash, and a rubber stamp in a dress. In the closet, he found many blue wax paper bags, a bag of powder suspected to be heroin, and a bag of leafy material suspected to be marijuana. No drug prescriptions were found. Detective Lawler determined that the motel room was registered to a female friend of Arbolay.

A forensic analytical chemist testified that the leafy material found in the closet was 373.126 grams of marijuana. The bag of powder found in the closet did not contain a controlled substance. The powder on the grinders was also not a controlled substance. The bag of suspected cocaine contained .9 grams of cocaine. The pills in the motel room were Alprazolam, also known as Xanax.

## STANDARD OF REVIEW

Before addressing the merits of any postconviction claim, the Court must first determine whether the claims pass through the procedural filters of Rule 61.[11] This Court will not address the substantive aspects of Mr. Arbolay's claims if the claims are procedurally barred.[12] Rule 61 imposes four procedural requirements on Mr. Arbolay's motion: (1) the motion must be filed within one year of a final order of conviction; (2) any basis for relief must have been previously asserted in any prior postconviction proceedings; (3) any basis for relief must have been asserted at trial or on direct appeal as required by court rules; and (4) any basis for relief must not have been formerly adjudicated in any proceeding. Under Rule 61(i)(5), a defendant may avoid the first three procedural imperatives if the claim is jurisdictional or is a "colorable claim that there was a miscarriage of justice because of a constitutional violation."[13] Further, challenges based on ineffective assistance of counsel may only be raised during a defendant's first Rule 61 proceeding.[14] Upon review, the Court is satisfied Mr. Arbolay's motion is timely and procedurally proper except as indicated below.

---

[11]*See Younger v. State*, 580 A.2d 552, 554 (Del. 1990) ("This Court applies the rules governing procedural requirements before giving consideration to the merits of the underlying claim for postconviction relief.").
[12] *See id.*
[13] Super. Ct. Crim. R. 61(i)(5).
[14] *See Wing v. State*, 690 A.2d 921, 923 (Del. 1996).

Ineffective assistance of counsel claims are governed by the two-prong test set forth in *Strickland v. Washington*.[15] The *Strickland* test requires the defendant to prove "counsel's representation fell below an objective standard of reasonableness" and "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[16] Evaluating counsel's conduct begins with a "strong presumption" the representation was reasonable.[17] This presumption is meant to avoid the "distorting effects of hindsight."[18]

Pursuant to Superior Court Criminal Rule 61(e)(6), "unless the judge appoints counsel for a limited purpose, it shall be the duty of counsel to assist the movant in presenting any substantial ground for relief available to the movant. Upon entry of a final order in a postconviction proceeding, counsel's continuing duty shall be as provided in Supreme Court Rule 26, unless counsel has been permitted to withdraw."[19]

Further, under Superior Court Criminal Rule 61(e)(7), post-conviction counsel has an obligation to assist the movant in presenting any substantial ground

---

[15] *See Albury v. State*, 551 A.2d 53 (Del. 1988).
[16] *Strickland v. Washington*, 466 U.S. 668, 688 (1984). Per *Strickland*, the Court is to begin its analysis under the strong presumption that the conduct of defense counsel constituted sound trial strategy. *See id.* at 689.
[17] *Albury*, 551 A.2d at 59.
[18] *Id.* at 60. The *Strickland* Court explained that an error by trial counsel, even if professionally unreasonable, does not warrant setting aside the judgment of conviction if the error had no effect on the judgment. *See Strickland*, 466 U.S. at 691.
[19] Super. Ct. Crim. R. 61(e)(6).

for relief.[20]  However, if counsel "considers the movant's claim to be so lacking in merit that counsel cannot ethically advocate it, and counsel is not aware of any other substantial ground for relief available to the movant, counsel may move to withdraw."[21]  If counsel moves to withdraw, they must explain the factual and legal basis for their opinion and provide notice to the movant, who may respond within thirty days of service, unless the court grants an extension of this deadline.[22]

## ANALYSIS

Defendant asserts nine reasons in support of his claim for post-conviction relief.  The Court will address each in turn.

### 1. Procedural bars inapplicable to Petitioner's first motion of post-conviction relief and further to claim an ineffective assistance of trial counsel prejudiced his defense.

In his first claim, Mr. Arbolay asserts that procedural bars set forth in Delaware Supreme Court Rule of Criminal Procedure 61 do not apply to his postconviction arguments as this is his first postconviction motion and his motion was filed within 1 year of the Delaware Supreme Court's affirmance. (A866-67). While Mr. Arbolay is correct that Rule 61's procedural bars typically do not apply to first postconviction motions filed within a year of the conclusion of a direct

---

[20] Super. Ct. Crim. R. 61(e)(7).
[21] *State v. Shover*, 20232 WL 3496206, *3 (Del. Supr. May 15, 2023).
[22] *Id*.

6

appeal, as outlined below, two of Mr. Arbolay's *pro se* postconviction claims are procedurally barred as the claims were previously adjudicated.[23]

### 2. Judicial notice and bad prior acts committed by arresting officers against Petitioner.

In his second claim, Mr. Arbolay requests that this Court take judicial notice of "the allegations" raised by Mr. Arbolay in his 1983 civil lawsuit in *Angel Luis Arbolay v. Bryan Vettori*, et al., Civ. No. 19976-GBW, which is pending in the United States District Court for the District of Delaware. (A867-69).

Delaware Rule of Evidence 201 permits this Court to take judicial notice of certain adjudicative facts.[24] "The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."[25] If there is any possibility of a dispute, the fact may not be judicially noticed.[26]

A review of the docket report for Mr. Arbolay's federal lawsuit reveals that on August 14, 2023, the Delaware District Court granted in part and denied in part Mr. Vettori's motion for summary judgment. (A910). In particular, the District Court granted Mr. Vettori's motion "as to Plaintiff's claims for illegal search and seizure,

---

[23] *See* Appendix Volume IV for Case No. 181001334A, A866-69 (2023).
[24] Del. R. Evid. 201(a).
[25] Del. R. Evid. 201(b); *Bigger v. Unemployment Compensation Comm*., 46 A.2d 137, 141 (Del. 1946).
[26] *Fawcett v. State*, 697 A.2d 385, 388 (Del. 1997).

delaying medical care, and filing false reports, and judgment is entered in Defendant's favor as to those claims." (A910). However, the District Court denied Mr. Vettori's motion "as to Plaintiff's excessive force claim. That claim shall proceed to trial." (A910). In light of the District Court's ruling on Mr. Vettori's motion for summary judgment, it is reasonable to conclude that Mr. Arbolay's allegations against Mr. Vettori are subject to reasonable debate because there has not been a judicial finding by the District Court as to the accuracy of Mr. Arbolay's fact allegations under a preponderance of the evidence standard. As such, this Court will not take judicial notice of the allegations in Mr. Arbolay's federal lawsuit because they have not been found by any trier of fact to exist.

### 3. Prior bad acts of arresting officers not properly raised by counsel.

In his third claim, Mr. Arbolay alleges that Trial Counsel was ineffective for failing to properly raise prior bad acts committed against him by Probation Officer Vettori. (A871). In support of this argument, Mr. Arbolay alleges that Probation Officer Vettori has committed "constitutional intrusions and tortious conduct" against Mr. Arbolay which included requesting a high cash bail in another criminal case. (A870).

In order to successfully allege ineffective assistance of counsel, a petitioner must show that counsel's performance both: 1) fell below "an objective standard of

reasonableness"[27] and 2) resulted in prejudice.[28]  Under the performance prong, the Delaware Supreme Court has held that "it is all too easy for a court examining counsel's defense after it has proved unsuccessful to succumb to the distorting effects of hindsight."[29]  As such, Trial Counsel's "actions are afforded a strong presumption of reasonableness and that reviewing court must "reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from the counsel's perspective at the time."[30]

A review of the record reveals that it was reasonable for Trial Counsel to not raise law enforcement's alleged prior bad acts against Mr. Arbolay during trial because it precluded the State from admitting incredibly prejudicial evidence during rebuttal.  During the July 15, 2019 pretrial conference, the State alerted the Trial Court about the possibility of Mr. Arbolay presenting evidence relating to law enforcement's actions.[31]

It is apparent from the State's representations that the State was ready and able to introduce incredibly prejudicial evidence in the event that Mr. Arbolay "opened the door" by testifying to law enforcement's "prior bad acts." (A58-59).  Trial Counsel did not allow for the door to be opened and the prejudicial evidence was

---

[27] *Strickland*, 466 U.S. 668; *Williams*, 529 U.S. 362; *Wiggins*, 539 U.S. 510; *Rompilla*, 545 U.S. 374.
[28] *Strickland*, 466 U.S. 687.
[29] *Neal v. State*, 80 A.3d 935, 942 (Del. 2013) (quoting *Strickland*, 466 U.S. 689).
[30] *Id.* (internal quotations omitted).
[31] *See* Superior Court of Delaware ID No. 1810013334A Federal Conference Transcript, A58-59 (July 15, 2019).

9

never admitted during Mr. Arbolay's trial. As such, Trial Counsel cannot be considered ineffective for not pursuing a line of questioning that would have exposed his client to prejudicial rebuttal evidence. Thus, Mr. Arbolay's claim that Trial Counsel was ineffective for failing to raise law enforcement's prior bad acts has no merit because it does not meet the *Strickland* standard.

### 4. Trial Counsel improperly conceded to the Prosecution's credibility of its case narrative.

In his fourth claim, Mr. Arbolay alleges that Trial Counsel was ineffective as his opening statement essentially conceded to the State's theory of the case. (A871-72). In particular, Mr. Arbolay takes issue with Trial Counsel's statement that "Mr. Arbolay was drunk, he was high, and he was being an idiot. He was screaming out of the Room 54 at the Dutch Inn on Rte. 13, which drew the attention of several officers who were there." (A96; A871-72).

The Delaware Supreme Court has long recognized that when there is alleged misconduct, the analysis is different when the misconduct occurs during a bench trial as opposed to a jury trial.[32] During bench trials, "a judge, sitting as a trier of fact, is presumed to have made his verdict only on the admissible evidence before him and to have disregarded that which is inadmissible."[33]

---

[32] *Kurzmann v. State*, 903 A.2d 702, 709 n.7 (Del. 2005) (citing *Burke v. State*, 1997 Del. LEXIS 95, *5-6 (Del. 1997); *Liggett v. People*, 135 P.3d 725, 2006 Colo. LEXIS 441, *25 (Colo. 2006)).

[33] *Id.* (quoting *Burke*, 1997 Del. LEXIS at *5-6); Burke, 1997 Del. LEXIS at *5-6 (quoting *United States v. Cardenas*, 9 F.3d 1139, 1156 (5th Cir. 1993)).

10

As Mr. Arbolay elected to waive his right to a jury trial, he must overcome the presumption that the Trial Court's verdict was based "only on the admissible evidence."[34] The record does not support a conclusion that the Trial Court relied on anything other than admissible evidence. As such, Mr. Arbolay is unable to demonstrate that he suffered prejudice from Trial Counsel's opening statement. In his reply, Defendant takes issue with post-conviction counsel's performance. This Court's review of the entire record leads it to conclude that post-conviction counsel has not be ineffective.

## 5. Counsel was ineffective for failing to file a motion for suppression of evidence.

In his fifth claim, Mr. Arbolay asserts that Trial Counsel was ineffective for failing to move to suppress the administrative search of the motel room performed by Delaware Probation and Parole. (A881-87). This claim is procedurally barred pursuant to Delaware Superior Court Rule of Criminal Procedure 61(i)(4).

In Mr. Arbolay's opening brief on direct appeal, Mr. Arbolay alleged that "the engagement of the appellant within the motel room, and the subsequent warrantless search of the residence was unreasonable based on the totality of the circumstances." (A819). The Delaware Supreme Court rejected Mr. Arbolay's argument and

---

[34] *Id.*

11

affirmed the judgment of the Superior Court. In particular, the Delaware Supreme Court held:

> "Probation Officer Vettori had reasonable articulable suspicion to search the motel room. The record reflects that Detective Lawler heard screaming from a motel room Arbolay was occupying, Arbolay admitted to having a domestic incident, and Arbolay initially consented to Detective Lawler entering the room. Arbolay then prevented anyone from entering the room and began ingesting pills. The record also reflects that Arbolay was on probation and, contrary to Arbolay's contention, Officer Vettori obtained his supervisor's approval to search the motel room."

In these proceedings, although Mr. Arbolay is asserting that Trial Counsel was ineffective, this claim essentially centers around the underlying issue of whether the search of the motel room was constitutional. (A881-87). However, as the Delaware Supreme Court rejected Mr. Arbolay's suppression-based argument on direct appeal and ruled on the suppression issue underlying the ineffective assistance of counsel claim, Mr. Arbolay's postconviction claim has been formerly adjudicated and is therefore, procedurally barred pursuant to Delaware Superior Court Rule of Criminal Procedure 61(i)(4).[35]

As an additional component of the fifth claim, Mr. Arbolay also alleges that Michael Modica, Esquire, was ineffective for failing to file a motion to exclude "the

---

[35] As this claim was previously adjudicated, this claim is fully exhausted, and Mr. Arbolay may raise the suppression argument in a petition of habeas corpus to the United State District Court for the District of Delaware pursuant to 28 U.S.C. 2254.

powdery substance" that was determined to not contain any controlled substance. (A888). This claim was also formerly adjudicated during Mr. Arbolay's direct appeal as the Delaware Supreme Court held that the "Superior Court did not abuse its discretion in admitting the non-controlled substance and the cocaine." (A846-47).

6. **Trial Counsel's failure to file a motion to exclude the text messages used by the State to develop its allegations of drug dealing.**

In his sixth claim, Mr. Arbolay asserts that Trial Counsel was ineffective for failing to move to exclude the text messages from Mr. Arbolay's cell phone. (A888-92). In support of his argument, Mr. Arbolay asserts that the search warrants used to search his cell phone were "general and lacked particularity" and therefore, the search and seizure "were subject to a Motion *in Limine* at a minimum, and a Motion to Suppress to ensure full Constitutional continuity for the petitioner's protected interests." (A889-90). Neither theory of ineffectiveness has merit.

a. **Trial Counsel attempted to exclude the text messages during Mr. Arbolay's trial.**

In his *pro se* motion, Mr. Arbolay acknowledges that "Trial Counsel objected to the admission of the text messages based on the vast amount of time between the Petitioner's arrest and request dates." (A892). As such, it appears that Mr. Arbolay takes issue with the fact that Trial Counsel's Motion *in Limine* was made orally on the first day of trial rather than by a formal written motion. (A892). Regardless of

its format, Trial Counsel did attempt to exclude the text message[36] and, therefore, Trial Counsel cannot be deemed ineffective for failing to file a Motion *in Limine*.

**b. There is no basis in law or fact to support a motion to suppress the search and seizure of Mr. Arbolay's cell phone.**

"The United States and Delaware Constitutions protect against unreasonable search and seizures by requiring that search warrants be issued only upon a showing of probable cause."[37]  The requirements for the issuance of a search warrant are codified in 11 *Del. C.* §§ 2306 and 2307 which set forth the "four corners" test for probable cause.[38]  Pursuant to the "four corners" test, there must be sufficient facts on the face of the affidavit to verify the existence of probable cause."[39]  As such, the supporting affidavit must allege sufficient facts to allow a "neutral judicial officer to form a reasonable belief that an offense has been committed and that seizable property will be found in a particular place or on a particular person.[40]

Additionally, the probable cause requires there to be "a logical nexus between the items sought and the place to be searched."[41]  A "nexus may be inferred from the factual allegations of the affidavit, including 'the type of crime, the nature of the items sought, and the extent of an opportunity for concealment and normal

---

[36] A72; A75-79.
[37] *State v. Albert*, 2015 Sel. Super. LEXIS 997 *5 (Del. Super. Ct. Dec. 3, 2015) (citing U.S. Const. amend. IV; Del. Const. art. 1, Section 6).
[38] *Id.* (citing Dorsey v, State, 761 A.2d 807, 811 (Del. 2000)).
[39] *Id.*
[40] *Id.*
[41] *Id.*

inferences as to where a criminal would hide [evidence of a crime].'"[42]   Thus, probable cause may be found when the totality of the circumstances establish a "fair probability that contraband or evidence of a crime will be found in a particular place."[43]

In *State v. Albert*, this Court was asked to determine whether a particular cell phone search warrant established sufficient probable cause.[44]   The affidavits of probable cause described the defendant's arrest, the results of a search, as well as a statement from the affiant that "based on his training, knowledge and experience, that people involved in criminal activity use cell phones to facilitate their crimes and to communicate with co-conspirators, and that drug traffickers use cell phones to conduct illegal activity, this established probable cause that evidence regarding Defendant's drug dealing would be found within the cell phones seized."[45]   Upon further review, Resident Judge Butler concluded that "the facts alleged in the affidavits for both the first and second set of cell phones established a minimally sufficient nexus between the criminal activity and Defendant's cell phones."[46]   In support of his conclusion holding, Resident Judge Butler noted that "the affidavits

---

[42] *Albert*, 2015 Del. Super. LEXIS at *5-6 (quoting *State v, Ivins*, 2004 Del. Super. LEXIS 164, 2004 WL 1172351, at *4 (Del. Super. Ct. May 21, 2004)).

[43] *Id*. at *6 (quoting *Sisson v. State*, 883 A.2d 868, 896 (Del. 2005)); *see also Jensen v. State*, 482 A.2d 105, 112 (Del. 1984) ("The test for probable cause is much less rigorous than that governing the admission of evidence at trial and requires only that a probability, not a *prima facie* showing, of criminal activity be established").

[44] *Id*. at *1.

[45] *Id*. at *9.

[46] *Id*. at *12.

stated facts sufficient to support a finding that Defendant… was involved in illegal heroin distribution" as well as contained "boiler plate language" about the Officer's training and experience which predominate… cell phone search warrants."[47] And when "these facts were viewed together" Judge Butler found that there was sufficient facts "to support an inference that Defendant used his cell phone" to commit criminal activity."[48]

Similar to the affidavits of probable cause in *Albert*, the affidavits of probable cause submitted in support of the search warrants in the present case described the events leading up to and immediately after Mr. Arbolay's arrest as well as the search of the motel room. (A38-41; A46-50). The affidavits also included similar "boilerplate" language about the Officers' training and experience and how "drug traffickers" conceal their criminal activity. (A42; A51). In light of the similarities between the affidavits in this case and the affidavits in *Albert*, the instant Trial Court, as in *Albert*, would have concluded that "the facts alleged in the affidavits… established a minimally sufficient nexus between the criminal activity and Defendant's cell phone."[49] Thus, there was not legal or factual basis for Trial Counsel to move to suppress the search and seizure of Mr. Arbolay's cell phone. Trial Counsel was not ineffective for failing to file a motion to suppress.

---

[47] Albert, 2015 Del. Super. LEXIS at *10-11.
[48] *Id*. at *11-12.
[49] *Id*. at *12.

**7. Lack of Petitioner's bifurcated habitual offender status hearing and sentencing.**

In his seventh claim, Mr. Arbolay asserts that he was denied due process when the State was permitted to amend its habitual offender petition motion on the day of sentencing and Trial Counsel was ineffective for failing to "argue the error." (A894).

In Mr. Arbolay's opening brief on direct appeal, Mr. Arbolay alleged that the Trial Court "erred in permitting the State to amend the habitual offender petition and failing to hold a separate hearing on the petition." (A829-34). The Delaware Supreme Court, however, rejected the argument holding that:

> "Even if the habitual offender petition was untimely under Rule 45(d), the Superior Court did not err in permitting the State to amend the petition and in granting the amended petition. The record reflects that the parties understood Arbolay faced a minimum twenty-five-year sentence for PFDCF as a habitual offender well before the filing of the original habitual offender petition in November 2019. This minimum sentence was raised during Arbolay's rejection of a plea offer in June 2019. It was also discussed during the parties' post-trial negotiations. In addition, Arbolay's counsel admitted that Arbolay had the felony convictions required by Section 4214(c), and that he had no good faith basis to oppose the merits of the petition. As to Arbolay's claim that the Superior Court failed to hold a separate hearing on the habitual offender petition, he did not request a sperate hearing and has not shown that he suffered any prejudice. Under these circumstances, we conclude that the Superior Court did not err in permitting the State to amend the habitual offender petition and in granting the amended petition. (A854).

17

In these proceedings, although Mr. Arbolay posits that Trial Counsel was ineffective for failing to challenge the State's amended habitual offender motion, in addition to Trial Court's due process error, his claim centers around the underlying issue of whether the Superior Court erred by granting the State's amended habitual offender petition. (A894). The Delaware Supreme Court already determined that the Superior Court did not err when granting the amended motion, Mr. Arbolay's postconviction claim has been formerly adjudicated and are therefore, procedurally barred pursuant to Delaware Superior Court Rule of Criminal Procedure 61(i)(4).[50]

### 8. Trial Counsel's ineffectiveness for failing to provide a meaningful adversarial testing of State's DNA evidence.

In his eighth claim, Mr. Arbolay alleges that Trial Counsel was ineffective for failing to meaningfully challenge the State's DNA evidence. (A898-00). In support of his argument, Mr. Arbolay asserts that Trial Counsel "had an obligation to cross examine the expert witness regarding whether the test samples had consistency with that of semen or skin/saliva/sweat/blood/hair" and/or was obligated to "enlist the services of a DNA expert to perform a preliminary analysis of the sample, which could have verified the petitioner's version of events…" (A899).

---

[50] As this claim was previously adjudicated, this claim is fully exhausted, and Mr. Arbolay may raise the suppression argument in a petition of habeas corpus to the United State District Court for the District of Delaware pursuant to 28 U.S.C. 2254.

It is well recognized that "an attorney may make certain strategic choices when presenting a client's case, so long as the choice is 'well within the range of professionally reasonable judgments.'"[51]  The decision as to "which witness to call, if any, is a permissible strategic choice" and "a reasonable attorney may… decide that Defendant's case did not warrant expert testimony or that introducing expert testimony would be counter-productive and harm Defendant at trial."[52]

A review of the trial transcripts in this case reveals that Trial Counsel effectively cross-examined the State's DNA expert witness and elicited testimony beneficial to Mr. Arbolay's defense.  Trial Counsel's cross examination spans over 21 pages which includes a concession from the State's expert that she could not opine as to how Mr. Arbolay's DNA ended up on the firearm. (A376-97).  Furthermore, Trial Counsel was also able to elicit favorable testimony from the State's expert regarding secondary DNA transfer.[53]

This testimony provided an alternative lawful explanation as to why his DNA was found on the recovered firearm.  In light of Trial Counsel's lengthy cross examination during which he elicited beneficial testimony supporting Mr. Arbolay's defense, the record does not support the conclusion that Trial Counsel did not meaningfully oppose the State's DNA evidence.  Moreover, the cross examination

---

[51] *State v. Holmes*, 2016 Del. Super. LEXIS 641, *13 (Del. Super. Ct. Sept. 28, 2016) (citing *Strickland*, 466 U.S. at 690-91, 699).
[52] *Id.* (citing *Cooke v. State*, 977 A.2d 803, 840-41 (Del. 2009)).
[53] *See* Superior Court of Delaware ID No. 1810013334A Trial Transcript, A380-81 (July 18, 2019).

reveals that there was no need to return a defense DNA expert as the points were made on cross.

**9. Appellate Counsel was ineffective.**

In his nineth claim, Mr. Arbolay alleges that Appellate Counsel, who represented Mr. Arbolay before Mr. Arbolay elected to proceed *pro se*, was ineffective. (A901-03). In support of this argument, Mr. Arbolay argues that the fact that the Delaware Supreme Court remanded his case for re-sentencing "is prima facie showing of Appellate Counsel's ineffectiveness under both prongs of Strickland…" (A903).

Prejudice is established by showing "there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different.[54] Reasonable probability has been defined as "a probability sufficient to undermine confidence in the outcome."[55]

While Appellate Counsel did not discover the merger issue during his review of Mr. Arbolay's case, ultimately, that issue was addressed by the Delaware Supreme Court by remanding Mr. Arbolay's case to the Superior Court for re-sentencing. (A854-55). As such, Mr. Arbolay was not prejudiced in any way by Appellate Counsel's failure to discover the merger issue. Thus, this claim has no merit.

---

[54] *Strickland*, 466 U.S. at 694.
[55] *Id*.

For the reasons stated above, Defendant's claims for post-conviction relief are **DENIED**.

### MOTION TO WITHDRAW

It is the Court's finding that, under Rule 61(e)(7), Counsel, through his Motion to Withdraw, "explained the factual and legal basis for their opinion and provided notice to the movant."[56] Further, this Court's independent review of the entire record leads it to conclude that Counsel has "considered the movant's claim and finds it to be so lacking in merit that they cannot ethically advocate it."[57]

For the foregoing reasons, Counsel Koyste's Motion to Withdraw is **GRANTED**.

**IT IS SO ORDERED.**

> */s/ Francis J. Jones, Jr.*
> Francis J. Jones, Jr., Judge

Original to Prothonotary

---

[56] *Shover*, 20232 WL 3496206, at *3.
[57] *Id*.